James Andrews, a Minor, by Thomas Andrews, His Father and Next Friend, Plaintiff-Appellee, v. General Contracting Company, a Corporation, Defendant-Appellant.

Gen. No. 62–M–5.

Fourth District.

September 22, 1962.

Burroughs, Simpson & Burroughs and Gordon Burroughs, of Edwardsville, and Emerson Baetz, of Alton, for appellant.

Lueders & Robertson, by Randall Robertson and Leo H. Konzen, of Granite City, for appellee.

CULBERTSON, J.

This is an appeal from a judgment of the Circuit Court of Madison County in favor of plaintiff, James Andrews, a minor, by Thomas Andrews, his father and next friend, as against defendant, General Contracting Company, a corporation, in the sum of $25,825, covering damages and medical expenses.

The minor, James Andrews, was twelve years of age, and while on the premises of the defendant, which plaintiff contended was an attraction to children and particularly to plaintiff, fell from a piece of machinery or equipment and severely cut or lacerated his right wrist on a piece of tile, or refuse, or debris, which plaintiff contends defendant had negligently allowed to remain on the premises when it knew or should have known that children of the age of plaintiff would be playing on the premises and might or could be injured on the premises.

On appeal in this Court the defendant contends that the Trial Court should have sustained defendant's motion for directed verdict or for judgment notwithstanding the verdict for the reason that there was no evidence of any culpable act or omission on part of the defendant which proximately caused or was con-

nected with plaintiff's injury, and that there was no evidence of the cost of rectifying any condition which may have caused plaintiff's injury, and also, that the damages awarded were excessive to such an extent as to show passion and prejudice on part of the jury.

The defendant's lot where plaintiff was injured was in an area which was largely residential and in a neighborhood where there are a number of children. Plaintiff was a twelve-year-old boy living near the lot, and on the day upon which he was injured, had gone across to the lot to play "cowboys." He had played on the unfenced rear portion of the defendant's lot a number of times before. The children would also play in and upon a hopper, similar to a railroad hopper car. The children while playing there on occasions moved some of the lumber from an adjacent Granite City Steel Company lot to make a shack. Frequently, the children used what they thought was scrap lumber to build club houses, and during play periods people working on General Contracting Company's fenced portion of the lot where its special equipment and offices were located, would see the plaintiff and other children playing on the unfenced portion at the rear of the lot, and several times had asked the children to leave the lot prior to the time when plaintiff was injured while playing on it. At one time prior to the injury a work shed on the rear of the lot had burned down and the fire department representatives had noted that children had been playing there. The president of the company knew the condition of the lot and had occasion to be on the lot at different times. The lot which was unfenced was covered with junk, boards, old machinery, and debris, which had been thrown there and which could be seen from the front of defendant's premises. The rear unfenced portion could also be seen from the adjoining Granite City Steel Company lot where the children played baseball

133

and other games. Defendant's lot was accessible to children from said adjoining lot.

On the day on which plaintiff was injured he had decided to saw off a piece of board for the purpose of using it in building a club house. He placed one end of the board on the ground and leaned it against the machinery, where he placed one foot on the machinery and one foot on the board. He had gotten the saw out of his father's garage. While doing so he fell backwards off the machinery to the ground, cutting his right wrist severely on a piece of broken tile or pipe which was laying on the ground at the rear of defendant's lot. Plaintiff received emergency treatment and was hospitalized for thirteen days, during which his arm was in a cast. The cast remained on his arm for a week after he left the hospital. He was in great pain and received medication for that pain. The treatment which was necessitated by the injury was likewise painful. He made 58 hospital trips in connection with the treatment, and was in almost constant pain, which was aggravated by the requirement of fitting a brace on his hand which forced and held the fingers in extension. The injury to plaintiff was a deep laceration over the palm or surface of the right wrist and resulted in complete severance of the flexor tendons of the fingers, and other injuries. The severed tendons had to be matched and sutured together by an attending physician. At the time of trial plaintiff had lost the motor nerves of the hand, and while he could do the various motions of the hand, he had a very weak grip and a weak hand, which will not allow him to get a firm grip because the tendons are caught in the scar. The weakness and scar are permanent and the evidence was to the effect that plaintiff could never do anything strenuous with the hand. Even writing causes the hand to become fatigued, and there was evidence that plaintiff will not be able to do

things an ordinary laborer could do, and that even using a paint brush was of such strenuous character as to prevent plaintiff from doing such work.

After the injury to plaintiff a fence was erected around the yard in which the injury occurred, made of lumber and steel mesh wire with barbed wire on top, to a height of about five feet. No evidence was offered of the cost of such fencing, which ran approximately 280 lineal feet around the unfenced portion of defendant's lot. There was also no evidence that such cost would have been or was prohibitive.

■ Under the attractive nuisance doctrine in this State, when a plaintiff has shown, (1) that premises under control of a defendant were maintained in a way that was attractive to children of tender years and defendant knew or should have known that children frequented the premises; (2) that a dangerous agency or condition for children existed on the premises; (3) that defendant knew or should have known of the dangerous condition or agency; (4) that defendant failed to remedy or correct the dangerous condition or agency, or to protect children from this danger; and (5) that the dangerous condition caused injury to a child—than a cause of action has been established under the doctrine outlined in Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836.

■ In the case before us under the facts all five of the elements obviously were present. Defendant had control of the premises, the unfenced area was littered with machinery and other items which would be attractive to children of tender years, defendant knew or should have known that children frequented the premises, and knew or should have known of the dangerous condition on the premises resulting from the junk or debris located on the unfenced lot. It is obvious that defendant failed to remedy or correct the dangerous condition or to protect plaintiff and

135

other children from the danger. While there was no direct evidence of the cost of correcting the dangerous condition, the simple fencing which apparently was all that was required, could have been done at a cost which was not prohibitive since the fence was actually erected shortly after the injury to prevent further injuries of the type sustained by plaintiff. It is also apparent that plaintiff was injured on the premises by reason of the dangerous condition.

■ ■ The piece of equipment upon which plaintiff was standing when he fell and the broken sewer tile upon which he lacerated his wrist, were not required to have been visible from the street to establish liability. In the case of Halloran v. Belt Railroad Company of Chicago, 25 Ill App2d 114, 119, 166 NE2d 98, an injured child was attracted to defendant's premises by a sand pile. He sustained his injury after he left the premises immediately adjacent thereto, when he fell under the wheels of a passing train. The Court in confirming liability stated that the defendant owner had noticed that the children habitually came upon the premises to play upon the sand pile, and a duty arose to exercise due care for their safety if they were exposed to danger in the immediate approach or adjacent to the premises. The Court emphasized that the attractiveness of the premises or instrumentality was the controlling and important factor. In the case before us the general attractiveness of the junk and other items on the unfenced lot which caused the children to play on it was the factor which having once attracted plaintiff to the premises, rendered defendant liable for injuries by another dangerous condition or agency thereon which might not have been the immediate factor which attracted the child to the premises.

■ The verdict which was returned in this case apparently was based upon evaluation of the various compensable elements of damage. As we have indi-

cated, plaintiff suffered great and prolonged pain, and has suffered a permanent disability which is serious to a youngster of the age of plaintiff. On review in this Court it would be difficult for us to state that the sum of $25,000 is an unreasonable amount of compensation for such injury, nor can we say that the verdict of the jury was so manifestly against the weight of the evidence relating to such injuries as to reveal passion or prejudice (Lau v. West Towns Bus Co., 16 Ill2d 442, 158 NE2d 63; Kahn v. James Burton Co., supra).

We must, therefore, conclude that the judgment of the Circuit Court of Madison County was proper and should be affirmed.

Affirmed.

SCHEINEMAN, P. J. and HOFFMAN, J., concur.