Hugh Henry, Administrator of the Estate of Laureace L. Henry, Deceased, Plaintiff-Appellant, v. Robert Kettell Construction Corporation, a Corporation, and Donald F. Stearn, Defendants-Appellees.

Gen. No. 66–55.

Second District.

April 24, 1967.

Corrigan and Mackay, of Wheaton, for appellant.

Popejoy, Bowman, Unverzagt and Nelson, of Wheaton, for appellees.

MR. JUSTICE BURT delivered the opinion of the court.

Plaintiff administrator brought this suit against Robert Kettell Construction Corporation and Donald Stearn, its employee, for wrongful death due to the alleged negligence of the defendants, causing the death of a three-year-old child, Laureace Henry, on September 18, 1961, when she was crushed to death by a truck of the defendant's corporation, driven by the defendant Donald Stearn. She had been playing on an unfenced premises improved with a newly constructed house and used by the defendant corporation as a storage warehouse and contractor's equipment yard. The complaint is based

solely on the theory of "attractive nuisance" and it is necessary to describe the premises and surrounding circumstances in more than usual detail for an understanding of this case.

The deceased had always lived with her parents in suburban areas much like the area of her home. Robert Kettell, the owner of the Robert Kettell Construction Corporation testified that about a dozen children under the age of ten lived within a block of the premises and that possibly forty children lived within a two-block area of the premises. He said it was an area where there were young married couples with children.

The house was located on the southeast corner of Arboretum Road and Hackberry Lane in a residential area of DuPage County. The premises consisted of three lots facing north towards Hackberry Lane; the corner or westerly lot was vacant; the middle lot had a residence on it which, between the time of its erection on April 1, 1961, and the date of the accident on September 18, 1961, was used as a storage warehouse.

A dirt driveway led northeasterly from the front door of the house to Hackberry Lane. Ruts caused by the tires of vehicles driven to and from the front door were three to four inches deep and Robert Kettell described the driveway as "fairly heavily rutted." The carport on the east side of the house was used to house contractor's equipment being repaired or maintained. There was a dirt pile in about the center of the lot probably twenty feet long, ten feet wide and seven to eight feet high covered with weeds and it was possible to back a truck between the front door of the house and the dirt pile. There was also a dirt pile in the rear yard with a diameter of twenty feet and a height of a little over four feet. There were weeds on the premises including the dirt piles. This was all shown in photographs in evidence.

The next or most easterly lot was used for the storage of contractor's equipment by the corporate defendant and by Earth Movers Inc., a corporation owned by Kettell. Most of its surface was covered with gravel so that the heavy equipment would not sink into the ground; there was a semitrailer, possibly thirty feet long and twelve feet high, parked on the eastern portion; and at the northern end there was a water faucet projecting about two feet out of the ground which Robert Kettell said was probably installed in 1960. Children would stop and drink there and play with the water; due south of the water faucet there were two round portable tanks, five feet long and three feet in diameter, of two hundred fifty-gallon capacity, standing off the ground on six or seven foot tripod legs; one was used for the storage of gasoline and one for oil; from time to time during the day there were automobiles parked there by the heavy equipment operators.

On September 18, 1961, a sunny autumn day, the minor decedent had played with her brother Dana age 5 and Keith Berland age 4 at the eastern end of the Henry premises from 2:30 p. m. until shortly after 4:00 p. m. At that time the decedent's mother decided to take Scott, her one-year-old son, for a walk but the three were not interested in going with her.

The mother was not going to a prearranged place but thought that if Mrs. Berland, an adjacent neighbor, were outside or not busy she would visit her. The Berland home was south of the Henry home, separated from it by three vacant lots. They walked to the Berland home and Mrs. Henry was standing in the kitchen when she learned of the fatal injuries sustained by the minor decedent.

The mother went directly to the house in question and found the minor decedent lying face down in the rutted driveway in front of the house.

424

She was not moving or making any sound and there was considerable blood around her head. The mother called her name several times but there was no answer; she checked her breathing but found none. A neighbor took them to a doctor, who pronounced the child dead.

The defendant, Donald F. Stearn, testified that he was employed by the corporate defendant as a working foreman on September 18, 1961. He had worked on the construction of the house. On "many" occasions he saw children on the premises, but never more than ten at a time. When he saw them he would "shag" them off the property as many times as necessary. Neither Mr. Kettell nor any superior of Stearn's ever gave any specific instruction what to do with children found on the premises. Robert Kettell, the owner of the defendant Corporation, testified that no instructions were ever given to fence or barricade the premises in question.

On the day in question Stearn drove to the warehouse in a red three-quarter ton Ford pickup truck owned by the corporation. When Stearn was seated behind the driver's wheel, he did not know how high his head was from the ground. He was six feet seven and one-half inches tall. The hood extended about five feet in front of him and was about four or five feet above the ground; there was an area in front and to the right of the right front fender where he couldn't see the ground, but he had no idea of the size of the blind spot.

He entered the warehouse premises from Hackberry Lane and made a left turn to the east, so that he could back the truck to the front of the house. Then he observed two boys with bicycles to the south of the truck and two younger boys playing around the dirt pile at the front of the house.

He backed the truck within three to five feet of the front door, removed a sump pump from the truck and

placed it in the house. He believed that the two older boys rode away during this time. When he came out of the warehouse the two younger boys were in the same area and he told them to stay away.

Stearn got into the truck by walking along the left side and getting in the driver's side. He admitted that he did not look around the area of the truck to see if the other children were in its immediate vicinity. Before driving off he did not look to the right or towards the carport because, "I did not feel there was any necessity to." He drove home and learned later that the minor decedent had been killed.

Keith Berland, the neighbor boy with whom the minor decedent had been playing, testified that only Laureace Henry, Dana Henry, and he were playing on the premises and that there were no older boys present. Keith asked Stearn what he came for and he said for supplies; Stearn did not tell them to get off the dirt pile; "all the men used to let us play there."

When Stearn was ready to climb in he said to the boys, "Go away from the truck while I pull out now." At that time Laureace was standing at the other side of the driveway about three or four feet away from the side of the truck. Dana Henry called Laureace over and the truck pulled out when she started to run. She got about three feet when the truck started to pull out. The truck came out a little faster and then she was hit by the front wheel and the back wheel missed her.

George Anonich testified that he was a general contractor engaged for thirteen years in residential and commercial construction. As a result of his inspection of the house and yard on October 12, 1965, he concluded that a snow fence would suffice to prevent a three-year-old child from coming on the premises in question.

He said it was the same type of fence seen along highways with slats an inch and a half to two inches wide and four or four and a half feet high interwoven with wire

426

to keep the slats together. They would be affixed to steel posts about every ten feet and would be reusable or salvageable after use at a given location.

He was familiar with the usual and customary charges in DuPage County on September 18, 1961, for the erection of fencing of this type and estimated that it would cost approximately $290 to erect the fence around the corner lot and the lot on which the house stood, or $255 to fence one and a half lots.

He had occasion to erect fences around ten or fifteen residences where he did not enclose the entire premises.

He was familiar with the general custom and practice of house builders in DuPage County. He said he did not put up a fence every time he built a home, just in situations where it was required.

In the Circuit Court, the third amended complaint was stricken for failure to state a cause of action, but this court reversed, in the case of Henry v. Robert Kettell Const. Corp., 44 Ill App2d 356, 194 NE2d 535 (1963), holding that the complaint, containing substantially the same allegations as are set forth above, did state a cause of action, and further held, at page 360, that "Whether or not the partially erected residence with the construction equipment thereon, the pile of top soil in the rear and front of the residence, the construction equipment on the premises or the water faucet located thereon were sufficiently attractive to allure and attract children onto the premises to play and whether or not the defendants knew or should have known that children were being attracted to the premises presented questions of fact for the jury. Likewise, whether or not the defendant should have anticipated the probability of injuries to children upon said premises, and whether the defendants were negligent in the operation of their vehicle upon said premises which resulted in the injury and death of the decedent were all matters for determination by the jury. Kahn v. James Burton Co., supra;

427

Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98."

The case was then submitted to a jury and resulted in not guilty verdicts as to both defendants, and plaintiff now appeals, claiming the verdicts were against the manifest weight of the evidence and that error was committed in the giving and refusal of two instructions.

The plaintiff relies upon the principles set forth in the leading case of Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836 (1955), which holds that where the owner or persons in possession of premises knows or should know that young children habitually frequent the vicinity of a defective structure or dangerous agency existing on the land which is likely to cause injury to them because by reason of youth they are incapable of appreciating the risks involved, and where the expense or inconvenience of remedying the condition is slight compared to the risk to the children there is a duty on the owner or other persons in control of the premises to exercise due care to remedy the condition or protect the children from injury resulting from it.

In the Kahn case the salient facts were these: Jacob A. Krieger and his wife owned land in the City of Chicago upon which James Burton Company, a contractor, was erecting a two-story home for them. The defendant Malkov Lumber Company piled lumber four and one-half feet high, six feet wide, weighing seven or eight tons on the job site in the usual and customary manner which did not include bracing; there were two piles of lumber, the ends of which came together in a manner resembling a boat. On prior occasions children had played on a mound of dirt thrown up by the masonry contractor. The eleven-year-old plaintiff had never played on the lot before the time that he and a companion went upon the piled lumber on the day in question. The minor climbed up the pile of lumber and while playing

on it the lumber toppled, causing the minor to fall and some of the heavier planks fell on him inflicting injury.

The trial court directed a verdict for the Kriegers, the owners, but entered judgment on the jury's verdict in the amount of $20,000 against Burton, the contractor, and Malkov, the lumber supplier. The Appellate Court reversed the trial court with directions to enter judgment for the two remaining defendants, holding them not responsible as a matter of law. The Supreme Court granted a petition for leave to appeal and reversed the Appellate Court and remanded the case to the Appellate Court with directions to pass upon other assignments of error. The Appellate Court thereupon sustained the trial court.

The Supreme Court in its opinion said at page 621:

"In the case at bar the questions whether the lumber was so piled as to create an unreasonable danger to children playing thereon, and whether it was so attractive to children as to suggest the probability that children would climb onto it, were questions for the jury under the circumstances shown in the record."

■ ■ As brought out by this case and subsequent cases the test to be applied is whether or not the party in possession and control of property, in the exercise of ordinary care, could reasonably have anticipated the likelihood that children would be attracted to the premises and injured by playing with or around the condition existing on the premises. The elements essential to base liability upon one in possession or control are: (1) that a condition dangerous to children existed on the premises; (2) that the defendant knew or should have known of the dangerous condition; (3) that defendant failed to correct the dangerous condition or to protect children from the danger; (4) that the dangerous condition caused the injury; and (5) that damages were

429

sustained as a result thereof. Andrews v. General Contracting Co., 37 Ill App2d 131, 135, 185 NE2d 354 (1962).

In the case at bar, defendants contend that the jury was warranted in finding no dangerous condition or agency existing on the premises, and that there was no evidence from which it could reasonably be concluded that defendant's motor vehicle in and of itself was a "dangerous condition" or agency. Defendant also argued that there was no evidence in the case at bar that the defendant Stearn operated the vehicle in any other manner than a reasonably prudent man would under similar circumstances. He did not see the child around the vehicle and all those whom he did see he waved away.

In the case of Schlatter v. City of Peoria, 309 Ill App 636, 33 NE2d 730 (1941) the court stated at page 638:

"Motor vehicles are the common method of transportation, and to say that they constitute such an allurement to children of tender years as to give rise to the application of the doctrine of attractive nuisance, when the motor vehicle is in use, is not warranted."

■ An inspection of the photographs in the record shows the presence of the piles of dirt, the water fountain, the partially completed residence and the contractor's equipment. If these items were considered together as an attractive agency it is still a question for the jury to decide whether these items separately or together are likely to cause the injury to children.

■ In the case of Driscoll v. Rasmussen Corp., 35 Ill2d 74, 219 NE2d 483 (1966), the court pointed out at page 78:

"Every person owes to all others a duty to exercise ordinary care to guard against injury which may naturally flow as a reasonably probable and foreseeable consequence of his actions, and a person in possession or control of premises frequented by

430

small children has an obligation not to maintain conditions which are dangerous or hazardous to them in view of the attendant circumstances. See Kahn v. James Burton Co., 5 Ill2d 614. But he is not an insurer of their safety. The general rule is that liability must be based on some fault. The injury must be the natural and probable result of a negligent act or condition and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence. An injury is not actionable that could not have been foreseen or reasonably anticipated as its probable consequence and that would not have resulted had not some new and independent cause intervened to produce it."

Other cases following the rule in Kahn are: Halloran v. Belt Ry. Co. of Chicago, 25 Ill App2d 114, 166 NE2d 98 (1960) ; Lance v. Senior, 66 Ill App2d 41, 45, 213 NE2d 616 (1966).

■■ In the view of this court, as indicated in the prior appeal, the question of liability here was for the jury and the jury has rendered its verdict. It is the opinion of this court that the verdict should not be set aside merely because the jury could have found differently or because this court felt that other conclusions would be more reasonable. (Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847 (1950).)

■ The trial court heard the evidence, observed the witnesses, considered the motions and refused to set aside the verdicts. (Mokrzycki v. Olson Rug Co., 28 Ill App2d 117, 170 NE2d 635 (1960) ; Green v. Smith, 59 Ill App2d 279, 284, 207 NE2d 169 (1965).) It is the opinion of the court that the verdicts are not contrary to the manifest weight of the evidence.

Plaintiff complains of the giving of defendants' instruction 5A which reads as follows:

"If you find that the premises owned by Robert Kettell Construction Corporation did not constitute an attractive nuisance, then Robert Kettell Construction Corporation owes no duty to a trespasser other than not to wilfully or wantonly cause the trespasser injury unless his presence on the premises is either known or from facts and circumstances should reasonably have been anticipated and then, if the owner knows or from the facts known to it should reasonably anticipate the presence of the trespasser in a place of danger, the owner is under a duty to use ordinary care not to injure the trespasser.

"You are further instructed that a trespasser is a person who goes upon the premises of another without permission or invitation."

■■■■ Any instructions to which objection is made must be objected to specifically in the trial court (Allen v. Howard Bowl, Inc., 61 Ill App2d 314, 210 NE2d 342 (1965); Wright v. Callaghan, 50 Ill App2d 157, 162–163, 200 NE2d 56 (1964)).

During the conference on instructions here, defendants' instructions numbered 5 through 8, on the duty of a property owner to a trespasser were discussed and withdrawn.

The record then shows the following colloquy:

"Mr. Unverzagt: 5 through 8 we will withdraw.

"The Court: 5 through 8, yes.

"Mr. Unverzagt: Yes, 5, 6, 7 and 8, your Honor.

"The Court: You depend pretty much on your theory of the attractive nuisance; that is the basis, isn't it?

"Mr. Mackay: Yes, that is correct.

"The Court: Then do you actually object to those? The duplication, that is out.

"Mr. Mackay: Let me think a moment.

"The Court: What about wilfully and wantonly, do we want to get that in, wilful and wanton?

"Mr. Mackay: To an adult trespasser it is, yes. Let me take a couple of sips of coffee and look this over. I will consent to the giving of this instruction.

"The Court: You will?

"Mr. Mackay: Yes.

"Mr. Unverzagt: I will have it typed. That will be Defendants' Instruction No. 5-A."

 Counsel for plaintiff thus participated in the discussions and in the drafting of Instruction 5-A, and made no further comments or objections. This is not sufficiently specific to be considered a valid objection, and actually indicates an acquiescence in the giving of the instruction. This objection to defendants' Instruction 5-A is therefore not well taken.

Plaintiff also objects to the refusal of the court to give plaintiff's Instruction Number 12 which reads as follows:

"Contributory negligence of the parents is not an issue in this case."

 This would have had the effect of directing a verdict on this issue. Proximate contributory negligence of the parents will bar recovery in an action for the wrongful death of a child. Ohnesorge v. Chicago City Ry. Co., 259 Ill 424, 102 NE 819 (1913); Hazel v. Hoopeston-Danville Motor Bus Co., 310 Ill 38, 141 NE 392; Crutchfield v. Meyer, 414 Ill 210, 111 NE2d 142.

In the case of Driscoll v. Rasmussen Corp., supra, the Supreme Court, at page 79, said: "Responsibility for a child's safety lies primarily with its parents, whose duty it is to see that his behavior does not involve danger to himself. Others can be held responsible for injuries only if they are at fault under some recognized theory of liability."

 Whether the mother was negligent in allowing her three-year-old child to play around the premises in question attended only by two small children aged 4 and 5 was a question properly submitted to the jury. The court properly refused to give plaintiff's Instruction Number 12.

We do not find errors in this record which would justify reversal and accordingly the judgment of the Circuit Court is affirmed.

Judgment affirmed.

ABRAHAMSON and MORAN, JJ., concur.