(No. 47120

THE PEOPLE *ex rel.* ROBERT WILCOX, Director of Insurance, *et al.*, Appellees, v. EQUITY FUNDING LIFE INSURANCE COMPANY.—(Bache & Co., Inc., *et al.*, Appellants.)

*Opinion filed September 26, 1975.*

SCHAEFER, J., took no part.

Donald R. Harris, Joan M. Hall, and David P. Sanders, all of Chicago (Jenner & Block, of Chicago, and Marvin Schwartz, Ulric R. Sullivan, Barbara Ann Banoff, and Sullivan & Cromwell, all of New York, New York, of counsel), for appellants.

William J. Scott, Attorney General, of Springfield, and Gerard B. Gallagher, Special Assistant Attorney General, of Elmhurst (Alan R. Woodard, and Kadison, Phaelzer, Woodard, Quinn & Rossi, all of Los Angeles, California, of counsel), for appellee, the Director of Insurance.

Everett B. Clary and Robert J. White (O'Melveny & Myers, of counsel), all of Los Angeles, California, for appellee the trustee in bankruptcy.

Marshall B. Grossman, Jack Corinblit, Lowell E. Sachnoff, Wilber H. Boies, Michael R. Szolosi, William M. Kahn, Nathan H. Dardick, and Richard L. Bernacchi (Sachnoff, Schrager, Jones & Weaver, Ltd., and Mc-Dermott, Will & Emery, both of Chicago; Corinblit and Shapero, and Schwartz, Alschuler & Grossman, both of Los Angeles, California; William J. Brown, Attorney General, of Columbus, Ohio; and Whitman & Ransom, of New York, New York, of counsel), for other appellees.

MR. JUSTICE RYAN delivered the opinion of the court:

This is an appeal to this court under Rule 302(b) (50 Ill.2d R. 302(b)) from the circuit court of Du Page County which entered an order approving an amended plan of liquidation for Equity Funding Life Insurance Company (EFLIC), a wholly owned subsidiary of Equity Funding Corporation of America (EFCA). The appeal has been taken by certain objectors to the approval of the amended plan of liquidation.

The Director of Insurance of the State of Illinois (Director) under the provisions of article XIII of the Illinois Insurance Code (Ill. Rev. Stat. 1971, ch. 73, par. 799 *et seq.*) filed a petition for conservation of assets of EFLIC in the circuit court of Du Page County. The court granted the prayer of the Director's petition. Later, on March 25, 1974, the Director filed a complaint for liquidation of EFLIC alleging the insolvency of the company and requested the entry of an order directing its liquidation and filed a petition for approval of a plan of liquidation (hereinafter referred to as the "original plan"). Pursuant to an order entered on that date a "Notice to Creditors and Other Parties" was published and sent to certain creditors.

On April 3, 1973, the Securities and Exchange Commission had filed a complaint against EFLIC's parent company, EFCA, in the United States District Court for the Central District of California alleging that for many years EFCA and certain of its officers had engaged in massive fraudulent activities. On April 5, 1973, EFCA filed its voluntary petition for reorganization under chapter X of the Bankruptcy Act (11 U.S.C.A. sec. 501 *et seq.*) in the United States District Court for the Central District of California and a trustee was appointed.

After April 3, 1973, approximately 200 actions including about 50 class actions were filed in various Federal and State courts against EFCA and others. In many of these actions EFLIC was named as a defendant upon allegations that as co-conspirator or aider or abettor EFLIC was jointly and severally liable with EFCA for damages to purchasers of EFCA's securities.

On April 23, 1973, Judge Malcolm M. Lucas of the United States District Court of the Central District of California consolidated for pretrial about 18 class actions against EFCA, EFLIC and others. On February 1, 1974, pursuant to 28 U.S.C.A., sec. 1407, the Judicial Panel on Multidistrict Litigation transferred to Judge Lucas all pending actions in all Federal courts relating to the EFCA fraud. This proceeding will be referred to as the MDL proceeding.

The circuit court of Du Page County in the proceeding from which this appeal has been taken found that a portion of EFLIC's book of business consisted of fictitious life insurance policies and many policies which had been validly issued and lapsed had been kept on EFLIC's books as valid in-force business. Substantially all of these fictitious and lapsed policies were reinsured with other life insurance companies. Pursuant to certain reinsurance and co-insurance treaties these life insurance companies caused monies to be paid to EFLIC for commissions and death claims on these policies. Through an audit the best possible

determination under the circumstances was made of the amounts owing to the reinsurers as a result of these payments. The original plan of liquidation provided, for a settlement of these claims and other claims not relevant to these proceedings.

The original plan of liquidation also provided that Northern Life Insurance Company of Seattle, Washington (Northern) would assume all of EFLIC's in-force insurance and restore each policyholder to full policy rights. Northern is also a wholly owned subsidiary of EFCA. No question has been raised as to its solvency nor has it been suggested that Northern is in any way tainted with the EFCA fraud.

Following the publication of notice to creditors as ordered by the circuit court of Du Page County on March 25, 1974, certain individual claimants and claimants acting on behalf of a class of claimants who had fraud claims against EFLIC filed claims and objections to the proposed original plan of liquidation. In addition to the fraud class claimants the State Teachers Retirement Board of Ohio and Jewel Companies Investment Trust filed individual claims in the court below totalling 15 million dollars. These claims were likewise based on alleged fraudulent activities of EFCA and EFLIC. The fraud class claimants alleged that for many years EFCA was engaged in massive fraudulent activities to overstate assets and earnings and to understate liabilities for the purpose of inflating the market price of EFCA securities; that EFLIC, a wholly owned subsidiary of EFCA, was engaged in a massive fraud to overstate the volume of its insurance business, its assets and earnings, and to understate its liabilities for the purpose of influencing the market price of EFCA securities; that EFLIC is liable as a co-conspirator and aider and abettor with EFCA and that the fraud claimants were owners of EFCA securities during the relevant period and suffered damages as a result of the fraudulent activities.

The primary objections to the approval of the original

plan were: (1) certain other claimants, including EFCA and various insurance companies were treated as preferred creditors of EFLIC to the practical exclusion of the fraud claimants, and (2) certain assets of EFLIC were being transferred without adequate consideration. The hearing on the approval of the original plan and the objections continued for several days. After the Director had rested his case the parties negotiated a settlement agreement which has been incorporated in what is referred to as the amended plan for liquidation.

The amended plan differs from the original plan principally in that certain changes were made in the proposed settlements with re-insurers, co-insurers and others. Of primary concern in this litigation is the additional provision in the amended plan which creates a 2-million-dollar fund. No provision had been made in the original plan for settlement of claims of fraud claimants. Under the amended plan EFLIC is to transfer to a designated depositary the sum of 2 million dollars less such amounts as the court may direct EFLIC to pay to counsel for the fraud claimants as attorneys' fees and expenses in these proceedings. The fund is to be used to pay approved past and future costs and expenses (but not attorneys' fees) incurred in the prosecution of actions by and on behalf of fraud class claimants in the MDL proceeding in the Federal District Court in California. At such time as the settlement fund is no longer needed for that purpose, but not more than five years from the settlement date, counsel for the fraud claimants shall apply to the district court for an order of distribution of the balance in the settlement fund to the members of the class. All procedures for distribution are subject to the approval and supervision of the Federal District Court. There is to be no deduction from the settlement fund other than actual costs and expenses (but not attorneys' fees). The distribution is to be made in conjunction with distribution of other funds recovered in the Multiple District Litigation

(MDL proceeding).

The order of the circuit court provided that the members of the class of fraud claimants who are potential creditors of EFLIC are presently undetermined but the membership of the class would include at most all persons, and their successors, who owned stock, debentures or warrants of EFCA at any time from January 1, 1964, through March 27, 1973, except those persons who had special knowledge of the EFCA-EFLIC fraud and were not deceived by any such conduct.

On August 6, 1974, the circuit court ordered that notice be given of the hearing on the amended plan. As ordered, notices were published in the same newspapers in which the original notice to creditors had been published pursuant to the March 25, 1974, order. Also, as ordered by the court, copies of the notice were mailed to: (1) All prospective members of the fraud claimants class who had filed claims and objections following the prior notice of the hearing on the original plan; (2) All of the attorneys for all of the parties (plaintiffs and defendants) whose names appear upon the most recent MDL service list, and (3) The mandatory service list in the EFCA bankruptcy reorganization proceeding. The notices required that any person who desired to be heard in opposition to the amended plan must file written objections on or before September 9, 1974.

Objections to the amended plan were filed by 9 law firms representing clients, some of whom were either shareholders or debenture holders of EFCA or were underwriter defendants (underwriters of debenture issues of EFCA who are charged by the fraud claimants with fraud in the issuance of these securities) accountant defendants (accounting firms who audited and certified EFCA and EFLIC financial statements and who are charged by the fraud claimants with fraud in so doing), broker-tippee defendants (brokers of EFCA securities who are charged by the fraud claimants with having sold EFCA

securities in March, 1973, on the basis of confidential information that EFCA securities were worthless) and seller-tippee defendants (owners of EFCA securities who are charged by fraud claimants with having sold the securities in March, 1973, on the basis of confidential information that EFCA securities were worthless). These objectors are all defendants in the MDL proceeding in the Federal District Court in California. They contend that they are fraud class claimants because they owned stock and securities of EFCA during the relevant period, thus coming within the class as defined by the court. They are the appellants in this court having appealed from the order of the circuit court overruling their objections and approving the amended plan. The 2-million-dollar fund is to be used to finance the prosecution of fraud claims in the MDL proceeding against at least some and possibly all of these objectors.

The objectors (appellants) do not object to those parts of the original plan incorporated in the amended plan. However, they contend that the settlement with the fraud class claimants is not in the best interests of the policy-holders, class members, creditors or shareholders and therefore the amended plan should not have been approved. In the trial court the appellants focused their objections on the proposed administration of the settlement fund; that is, the payment of the fund to a depositary to be used to finance the MDL litigation wherein the objectors are defendants. They did not object to the allocation of the 2 million dollars directly to those who have been injured by EFLIC's participation in the EFCA fraud.

No question is raised on this appeal as to the notice to creditors given as directed in the March 25, 1974, order. The objectors to the amended plan (appellants in this court) did not file claims against the EFLIC estate within the time prescribed in the order and notice. They are parties to these proceedings only by virtue of their claimed

membership in the class of fraud claimants. The question was not raised in the trial court whether they are properly members of the class in view of their apparent conflicting interests with the remainder of the class. This question has been alluded to on this appeal and will be discussed later.

It is the appellants' contention in this court that the amended plan of liquidation which includes the stipulation and compromise agreement of the claimants cannot bar the claims of the other members of the class who were not given actual notice of the amended plan and the proposed settlement. Notice of a hearing on the amended plan was given as specified in the court's order of August 6, 1974, to the persons and in the manner previously discussed. Citing *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140, the appellants contend that absent class members cannot be bound by the amended plan and settlement agreement without actual notice to those members who are reasonably identifiable. Notice by publication, they contend, is simply insufficient. *Eisen* was decided under the requirements of Rule 23(c)(2) of the Federal Rules of Civil Procedure. Although notice to absent class members as it relates to due process was discussed in *Eisen*, that constitutional requirement was not the basis of the *Eisen* decision.

Section 52.1 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 52.1) provides:

> "An action brought on behalf of a class shall not be compromised or dismissed except with the approval of the court and, unless excused for good cause shown, upon notice as the court may direct."

The notice given to the members of the fraud class claimants conformed to the August 6, 1974, order of the court. Appellants contend, however, that the notice is inadequate under *Eisen* to bind absent class members.

The appellees (the Director, the bankruptcy trustee and the fraud claimants) contend that this issue was not raised in the trial court and therefore the question of the

not sufficient as to them. They do not state wherein the notice which was given to other class members is deficient. They only contend that no actual notice (other than by publication) was given to the members of an undetermined class and that no attempt was made to identify those members. Neither section 52.1 of the Civil Practice Act nor the requirements of due process as suggested in *Eisen* requires individual notice to all members of the class in all circumstances. Had the issue been raised in the trial court the nature of the alleged deficiency could have been ascertained and the appellees would have had the opportunity to refute the allegation and to establish that the notice given did comply with due process requirements. sufficiency of the notice to class members cannot be raised for the first time on appeal. The appellants offer a dual reply to this contention.

First, the appellants suggest that the question of the sufficiency of the notice of the settlement to class members was raised below in the memorandum of Bache & Co. and other objectors filed in opposition to the amended plan. We have examined this memorandum and find that the reference to notice is only obliquely made and then only concerns the maintenance of a Federal class action under Rule 23. The meager reference to notice contained in this memorandum relates only to such notice as may be later required in the Federal class action in the MDL proceeding. The reference to notice does not in any way challenge the sufficiency of the notice which was given to the class members concerning the amended plan and proposed settlement agreement. The question of the sufficiency of this notice was not raised by any pleading filed in the trial court. It was not argued orally before the trial court and it was not briefed or argued in the memoranda filed in opposition to and in support of the approval of the amended plan. Finally, the trial court did not have an opportunity to decide this question and in fact did not decide it.

This court has many times stated as a general proposition of law that an issue not raised in the trial court cannot be raised for the first time on review. (*In re Estate of Leichtenberg,* 7 Ill.2d 545; *Benson v. Isaacs,* 22 Ill.2d 606; *Little Sister Coal Corp. v. Dawson,* 45 Ill.2d 342.) Although this general rule as noted later is not unyielding, this court has stated that a court of review should not and will not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented in the trial court. *Hux v. Raben,* 38 Ill.2d 223; *Cockerill v. Wilson,* 51 Ill.2d 179.

The appellants who are more than 100 defendants in the MDL proceeding do not complain that the notice was We conclude that by the failure to raise the question of notice to the class members in the trial court the appellants cannot raise the question at this time in this court.

Alternatively, appellants urge that although the question may not have been raised below this court should consider it because this case has great public interest, citing *People ex rel. Baylor v. Bell Mutual Casualty Co.,* 54 Ill.2d 433, and *Doran v. Cullerton,* 51 Ill.2d 553. In *Doran* this court stated at page 558-559:

> "*** all factual matters necessary for this determination are presented in the record before us and this issue has been argued and briefed by all parties. We also find that this matter is of great public importance, and will therefore consider plaintiff's contention."

Before a court of review should disregard the general rule and undertake to decide an issue not raised in the trial court it is essential as stated in the cited cases that all factual matters necessary to the determination of the question be presented in the record before the court. (*Kravis v. Smith Marine, Inc.,* 60 Ill.2d 141.) Under the complex factual picture of this litigation and with no one appearing before the trial court or this court who contends

that the notice is deficient as to him, we are not prepared to say all the factual matters necessary for a determination of the issue of notice are presented in this record. We are therefore, not in a position to decide whether the notice given was so deficient as to deny some members of the class due process.

The appellants also contend that the proposed settlement is not fair to EFLIC's policyholders. This question also was not raised in the trial court and for the reason previously stated will not now be considered in this court. The trial court in its order approving the amended plan specifically concluded that the assumption by Northern will fully protect EFLIC's policyholders and thus aid in the ultimate objective of this litigation. The appellants have shown us nothing in the record that contradicts this conclusion of the trial court. We note also that no policyholder has questioned the fairness of the amended plan. In view of our disposition of this issue it is unnecessary for us to determine whether the appellants have the requisite standing to raise the question on behalf of the policyholders. See *Flast v. Cohen,* 392 U.S. 83, 20 L. Ed. 2d 947, 88 S. Ct. 1942.

Appellants also contend that the settlement is not fair to EFLIC's shareholders. Since EFCA is the sole shareholder of EFLIC stock, the contention is that the settlement is not fair to EFCA. The trustee who was appointed for the parent company in the reorganization proceedings under the Bankruptcy Act is vested with title to EFCA's assets including the outstanding stock of EFLIC (11 U.S.C.A. sec. 110). The trustee is also vested with the power, upon approval of the bankruptcy court, to compromise controversies arising in the administration of EFCA's estate (11 U.S.C.A. sec. 50). The trustee has approved the amended plan. This action has been affirmed by the Circuit Court of Appeals for the Ninth Circuit. (*In re Equity Corp. of America,* No. 74–3394, filed July 21, 1975.) The bankruptcy court and not this court is the

appropriate forum in which creditors of EFCA (appellants) should challenge or examine the trustee's action. (*Gochenour v. Cleveland Terminals Building Co.* (6th Cir. 1941), 118 F.2d 89.) The appellants cannot therefore raise in the State court the question of the fairness of the amended plan to EFCA.

The next contention of the appellants is that the amended plan is not fair to the fraud class claimants. As previously noted in this opinion the appellants did not file claims against EFLIC estate within the time specified in the March 25, 1974, order. The appellants are now involved in this case only because of their claimed membership in a class of fraud claimants, on whose behalf a claim was filed within the time specified in the order. As previously stated, that class was defined by the court as "a class whose members are presently undetermined but whose members would include at most all persons who owned stock, debentures or warrants of EFCA at anytime from January 1, 1964, through March 27, 1973, except those persons who had special knowledge of EFCA or EFLIC fraud and were not deceived by any such conduct." The objection to the original plan was filed by certain individuals on behalf of themselves and others similarly situated. The objection alleged that the claimants and members of the class whom they purported to represent sustained damages as a result of the fraud of EFLIC in conjunction with EFCA "and the other defendants joined in the California action [MDL proceeding]." The appellants here are all defendants in the MDL proceeding. They may also be "persons who had special knowledge of EFCA or EFLIC fraud" (which would exclude them from the class as defined by the court). One may question whether the appellants may properly speak for the class or whether they are even parties to these proceedings. This has been alluded to in the briefs of the appellees but it has not been urged that the objections be overruled for these reasons. It appears, however, that when the appellants object to the

use of the 2-million-dollar settlement fund to pay the expenses of the MDL proceeding (but not attorneys' fees) they are more concerned with protecting the position of the defendants in the MDL proceeding than they are with improving the possibility of recovery for those who have been defrauded. Many of the appellants may ultimately prove to be proper members of the class as defined by the court and on whose behalf the class action was filed. We cannot at this stage and from this record say that all are not. We must therefore consider the merits of this contention. We are compelled, however, to recognize and to acknowledge this apparent inconsistency.

As noted earlier section 52.1 of the Civil Practice Act provides that a class action should not be compromised or dismissed except with the approval of the court. The joint Committee Comments to this section state that it is designed to prevent abuse in the compromise and dismissal of class suits and that it is patterned after what is now Federal Rule 23(e) (S.H.A., ch. 110, par. 52.1, Committee Comments, p. 24). Under Rule 23(e) the standard used by the courts in evaluating a compromise is that the proposal must be fair and reasonable and in the best interests of all those who will be affected by it. The court's decision is discretionary and a court of review will intervene only upon a clear showing that the trial court was guilty of an abuse of discretion (Wright and Miller, Federal Practice and Procedure: Civil, sec. 1797). Many factors enter into the consideration of the parties to litigation in arriving at a compromise settlement. The result is achieved by each party weighing and assessing the strength and weakness of his position. Since the result is a compromise the court in approving it should not judge the legal and factual questions by the same criteria applied in a trial on the merits. Nor should the court turn the settlement approval hearing into a trial. To do so would defeat the purpose of the compromise to avoid a determination of sharply contested issues and to dispense with expensive and

wasteful litigation. (*Levin v. Mississippi River Corp.* (S.D.N.Y. 1973), 59 F.R.D. 353.) Approval should be given if the settlement offer is fair, reasonable and adequate. These general terms cannot be precisely defined. The Supreme Court has directed that a judge reach "an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated" and to "form an educated estimate of the complexity, expense, and likely duration of such litigation *** and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424-425, 20 L. Ed. 2d 1, 10, 88 S. Ct. 1157; *State of West Virginia v. Chas. Pfizer and Co.* (2d Cir.), 440 F.2d 1079, 1085.

In the order approving the amended plan the trial judge found that the fraud class claimants asserted and offered to establish that purchasers of EFCA securities were damaged in an amount of at least 300 million dollars; that Jewel Company Investment Trust and the State Teachers' Retirement Board of Ohio asserted and offered to establish fraud claims against EFLIC totalling more than 15 million dollars; that liability to the fraud class claimants is a matter involving serious and unsettled factual and legal issues; that substantial disputes might arise as to the application of various periods of limitation and as to the measure of damages; that the cost of litigating these issues from the standpoint of the EFLIC estate and the claimants would be extremely large and the time to obtain final judicial determination of each claim would substantially delay the liquidation proceedings and would unduly prejudice the policyholders of EFLIC; that if all fraud claimants were successful in the litigation, the assets of EFLIC would be insufficient by a great margin to fully satisfy the potential claims and if the claimants failed to

establish liability the efforts would be wasted and the costs and delays would materially deplete the EFLIC estate; that the interests of the fraud class claimants have been adequately represented in the prosecution of the litigation, in the settlement negotiations and in the hearings relating to the settlement; that the settlement is the result of good faith and arms length bargaining between competent counsel for the fraud class claimants and the Director and others; that no objector to the amended plan has alleged that the amount of the settlement fund is not adequate or reasonable in size and counsel for the objectors at the hearing represented to the court that there is no objection to the allocation of the 2 million dollars to the people who were injured by EFLIC's participation in the fraud; that the settlement does not deprive EFCA of assets to which it would otherwise be entitled because EFLIC is insolvent and thus there are no assets which would go to EFCA, also EFLIC stock is pledged as security and any liquidating dividend would be paid to the pledgees and not to EFCA; that the stipulation to settle incorporated in the amended plan is a fair, reasonable and adequate compromise between the parties; that the settlement fund represents a small part of the total fraud class claims and that the use of the fund as stipulated is likely to result in a far greater benefit to the fraud class claimants than could be obtained by any other use and distribution of this settlement fund.

From these findings it is obvious that the trial court considered the effect of the compromise on each of the interests represented and concluded that it is to the best interest of all that it be approved. The appellants did not contend in the trial court and do not now contend that the settlement fund could have been increased above 2 million dollars. The potential fraud claims to be satisfied from this fund totalled approximately 315 million dollars. Obviously, any attempt to directly distribute the settlement fund to the claimants, as appellants suggest be done, would amount to an insignificant benefit to each. The court

correctly considered that a greater benefit would be derived by the members of the class if the fund were used to pay the expenses of conducting the MDL proceeding in the District Court in California where recovery may be had against other parties to the fraud. The findings of the court illustrate that the judge was well aware of and considered the complexities of the case, the expense of the prolonged litigation to all parties, the duration of the litigation and its effect on EFLIC's policyholders and estate, the remote possibility of collecting in full any judgment which the fraud claimants would obtain and all other factors relevant to a full and fair assessment of the wisdom of the compromise. *TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 20 L. Ed. 2d 1, 88 S. Ct. 1157.

In litigation as complex as that involved in this case and with the many divergent interests it is inescapable that reasonable minds may differ as to the wisdom of certain provisions of the settlement agreement. That some alteration in the agreement may have been more beneficial to certain interests is not the test. The trial judge must view the settlement as a whole, considering all relevant factors in assessing the compromise. We feel that the trial judge who presided at the settlement hearing soundly exercised his discretion in evaluating and assessing the wisdom of the compromise agreement. We have not been shown wherein there has been an abuse in the exercise of this discretion. Under these circumstances, we will not substitute the judgment of this court for that of the circuit court of Du Page County.

*Judgment affirmed.*

MR. JUSTICE SCHAEFER took no part in the consideration or decision of this case.