GEORGE E. McCLURE, Adm'r of the Estate of Mark E. McClure, Deceased, Plaintiff-Appellant, *v.* JESSIE D. SUTER *et al.*, Defendants-Appellees.

Second District    No. 77-46

Opinion filed August 23, 1978.

NASH, J., dissenting.

Moehle, Reardon, Smith & Day, of Washington, for appellant.

James M. Regnier, of Fearer & Nye, of Rochelle, for appellees.

Mr. JUSTICE WOODWARD delivered the opinion of the court:

Plaintiff-administrator, George McClure, brought this suit against defendants, Jessie and Virginia Suter, to recover damages in connection with the death of his son, Mark. The jury rendered a verdict in favor of defendants and plaintiff appeals.

Before considering the merits of this case, we observe that this case is before us for a second time. On the first appeal (Docket No. 75-144, Rule 23 Order filed August 4, 1976) we granted defendants' motion to dismiss the appeal without prejudice, finding that jurisdiction was lacking in this case as there was no evidence that judgment was ever entered on the verdict of the jury. Following that dismissal a written judgment order was entered on the verdict, and following the post-trial motion, plaintiff has taken a timely appeal. We therefore will proceed to the substantive issues of this case.

Defendants owned the Virginia Lake Campground, located midway between Oregon and Byron, Illinois. The campground contained approximately 29 acres and had a small swimming lake at the entrance. An admission charge of $3 per night for a family of four was collected upon entrance to the campground, in return for which various activities were provided, including general camping, swimming, fishing and boating.

The swimming lake was man-made and was approximately 150 to 175 feet in diameter. The east end was strictly for small children; the west end of the lake was deep; it was sectioned off and a sign was posted that no swimming was allowed there. A large sign, located at the west end of the lake, listed the following regulations:

"LAKE REGULATIONS

Swimming by adult supervision only
No children under 14 without an adult who can swim
No 'ducking' or 'rough housing'
No pets allowed in the water or on the beach
No long pants— swim suit or 'cutoffs' only
Hours—Dawn—9:00 P.M. for campers"

These regulations were also posted near the lodge and in the restrooms. The "adult swimming rule" was also on every camping receipt. No

member of the campground staff was present at all times while someone was swimming; styrofoam lifebuoys were placed on either side of the lake.

Plaintiff testified he and his family arrived at the campground between 1:30 a.m. and 2 a.m. on September 5, 1971. The McClure children got up around 6:30 a.m., ate breakfast and engaged in various activities. About 30 to 40 minutes later, Mark, age 15, requested permission from his mother to go swimming with his brother, Steven, age 14, and two friends; according to plaintiff, Mark was an excellent swimmer. Plaintiff remained at the camper drinking coffee with friends until his son Steven came running back to the camper saying that Mark had gone down in the lake. Plaintiff returned to the lake with Steven. Several men went into the lake and brought Mark up. Attempts were made to revive Mark; ambulances arrived in about 15 to 17 minutes. On cross-examination plaintiff stated that he had not read the swimming regulations on the camping receipt nor had he inspected the swimming lake prior to the occurrence.

Mrs. Evelyn McClure's testimony was substantially the same as her husband's. She also stated that during the rescue operation someone threw a styrofoam "raft" out to the men and it broke in half, so a rope was used to pull the men and Mark to shore. On cross-examination she stated that she had allowed her son to swim unsupervised in areas other than defendants' campground. She did observe the swimming lake when the family arrived; she saw a regulation sign and as both her sons could swim and were 14 and 15 years old, she gave them permission to go swimming.

Steven McClure testified that after receiving permission Mark and he and two friends went to the shore of the lake; the water was cold and it took a while to get used to the water. The boys swam across the lake several times, then engaged in a game of tag. When it was Mark's turn to be "it" he started swimming from the far side of the lake towards the others; however, in about the middle, he stopped swimming and began splashing around. Mark then went under the water; Steven did not hear him cry out. At first no one did anything; then someone yelled to go and get Mark's parents. Steven swam back to shore and returned to his family's campsite. He returned to the lake with his parents and helped point out where Mark had gone down. He also observed the styrofoam "ring" break during the rescue operations.

Dr. Robert F. Dearborn testified that he was called to the defendants' campground where he confirmed Mark's death. According to Dr. Dearborn the body showed signs common to one who has drowned or who has been asphyxiated. On cross-examination, he stated he did not perform an autopsy and could not say definitely what the cause of death was.

It is plaintiff's position that defendants were negligent as a matter of law

in not providing lifeguards and other necessary safety devices. The rule of law in Illinois places on the defendants the legal duty to make reasonable provisions and to take reasonable precautions to provide for the safety of their patrons. See *Brumm v. Goodall* (1958), 16 Ill. App. 2d 212, 147 N.E.2d 699; *Decatur Amusement Park Co. v. Porter* (1907), 137 Ill. App. 448.

Defendants' campground is a small-scale operation; the admission fee for a family of four was $3 per night. Defendant Jessie Suter testified that his only staff consisted of his two teen-age sons and an unsalaried niece and nephew. A large sign advising campers of the "adult swimming rule" was posted by the lake and elsewhere on the grounds; in addition the rule was on the receipt given at the time the camping fee was paid. The swimming lake itself was relatively small and the deepest portion, approximately 10 feet in depth, was sectioned off, with a sign forbidding swimming in that area of the lake. Defendant Jessie Suter also testified that while most of their duties involved maintenance work, his staff did make periodic checks for children swimming unaccompanied by parents. While witnesses testified that a styrofoam buoy broke during rescue operations, there was no testimony as to the reason it broke, or that this caused the drowning of plaintiff's decedent.

■■ Considering all of the factors outlined above we cannot say that the precautions and provisions regarding lake safety taken by the defendants were unreasonable as a matter of law.

Moreover, from the evidence presented the jury could have reasonably concluded that Mark could have died regardless of the presence of lifesaving personnel. By all the testimony Mark was an excellent swimmer. Without the benefit of an autopsy, Dr. Dearborn was unable to state the precise cause of death, and he admitted that there are many ways in which a person can die in the water that may not be related to drowning. The testimony of Mark's brother, Steven, indicated that when Mark went down in the lake, for a minute none of the boys perceived that anything was wrong. According to Dr. Dearborn, death could be imminent if one were denied oxygen for much more than a minute. There was also the testimony of plaintiff's witness, Gary Taylor, Director of Safety Programs for the American Red Cross, Rock River Chapter, that under the cloudy water conditions of the swimming lake, due to a storm the previous night, it would take several minutes to find, recover and begin artificial respiration on a swimmer who had gone down in that lake.

A reviewing court cannot substitute its judgment for that of the jury if there is sufficient evidence in the record to support the verdict. (*Rhodes v. Oliva* (1973), 13 Ill. App. 3d 849, 301 N.E.2d 126.) As the jury could have reasonably concluded from the evidence that defendants were not negligent, the jury's verdict must stand.

Next, plaintiff contends that the trial court erred in instructing the jury on the contributory negligence of plaintiff and his wife. The jury was instructed in pertinent part as follows:

"Plaintiff's Instruction No. 17.

\* \* \*

Second, that GEORGE McCLURE and EVELYN McCLURE the parents of MARK E. McCLURE before and at the time of the occurrence were using ordinary care for the safety of MARK McCLURE:

\* \* \*

Defendants' Instruction No. 2.

When I use the expression 'contributory negligence', I mean negligence on the part of the plaintiff that proximately contributed to cause the death.

Defendants' Instruction No. 3.

When I use the expression 'contributory negligence', I mean negligence on the part of George E. McClure and Evelyn McClure that proximately contributed to cause the death.

Defendants' Instruction No. 4.

It was the duty of George E. McClure and Evelyn McClure, before and at the time of the occurrence, to use ordinary care for the safety of Mark E. McClure. This means it was the duty of George E. McClure and Evelyn McClure to be free from contributory negligence."

Plaintiff's objection to the instructions was that there was not enough evidence of contributory negligence on the part of the plaintiff and his wife to go to the jury. There was evidence that Mark was an excellent swimmer and that he was the required age for swimming without adult supervision under the campground regulations. However, there was also testimony that neither parent had inspected the lake prior to giving Mark permission to swim there; neither plaintiff nor his wife had discussed with Mark the dangers of swimming in unsupervised areas, nor had they discussed any of the campground swimming regulations with Mark prior to allowing him to swim in the lake.

Plaintiff's reliance on *Sheley v. Guy* (1975), 29 Ill. App. 3d 361, 330 N.E.2d 567, *aff'd* (1976), 63 Ill. 2d 544, 348 N.E.2d 835, is misplaced. There plaintiff individually and as administrator brought suit against defendant for the death of his four-year-old daughter, struck by defendant's car. The defendant offered an instruction predicated upon the proposition that the evidence demonstrated the mother's failure to properly supervise the child. However, in that case the instruction advised the jury that if they found the mother negligently contributed to

the cause of the death of the decedent, such would preclude the mother from participating in the award. The trial court refused the instruction and on appeal that ruling was upheld.

The tendered and refused instruction in *Sheley v. Guy* applied to the amount of damages and the mother's right to participate in the award. However, that is not the issue before this court. As plaintiff has expressed it at both the instructions conference and in his post-trial motion as well as in his brief on appeal, the objection to the instruction was that the evidence was insufficient to raise the issue of contributory negligence on the part of Mark's parents and that therefore the instruction should not have been given.

To preserve an objection to an instruction on review the grounds for the objection must have been specifically raised in the trial court so that the trial court could have the opportunity to correct the defective instruction. (*Dean v. Keith's & Ralph's Tavern, Inc.* (1975), 25 Ill. App. 3d 970, 324 N.E.2d 7.) In *Struthers v. Jack Baulos, Inc.* (1977), 52 Ill. App. 3d 823, 368 N.E.2d 148, relying on *Wozniak v. Segal* (1974), 56 Ill. 2d 457, 308 N.E.2d 611, this court held that neither the trial court nor a reviewing court is bound by the failure of a party to specifically challenge a special interrogatory and the trial court could properly consider the issue as raised in plaintiff's post-trial motion for the first time, if it considered that necessary in the interest of justice. However, we find both *Wozniak* and *Struthers* to be distinguishable from the case at bar.

In *Wozniak*, the appellate court held that since in her post-trial motion plaintiff had failed to seek relief from the finding of the jury on the special interrogatory submitted to it, it was compelled to affirm the judgment, and in so holding refused to consider alleged errors in the rulings of the trial court with respect to the jury *which had been asserted in the post-trial motion.* Likewise, in *Struthers*, plaintiff's attorney made a general objection to the interrogatory submitted by the defendants; specific objections to deficiencies in the instructions were raised for the first time in plaintiff's post-trial motion.

■■ Unlike *Wozniak* and *Struthers*, plaintiff has raised the same specific objection to the above instructions at the conference on instructions, in the post-trial motion, and before this court on appeal. Before a court of review should disregard the general rule and undertake to decide an issue not raised in the trial court it is essential as stated in the cited cases that all factual matters necessary to the determination of the question be presented in the record before the court (*People ex rel. Wilcox v. Equity Funding Life Insurance Co.* (1975), 61 Ill. 2d 303, 313, 335 N.E.2d 448, 454); that this issue has been argued and briefed by all parties, and that the matter is of great public importance. *Doran v. Cullerton* (1972), 51 Ill. 2d 553, 283 N.E.2d 865.

■■ We are aware that contributory negligence on the part of the next of kin of the decedent does not bar all recovery in a wrongful death action. (See Illinois Pattern Jury Instructions, Civil, No. 31.08 (2d ed. 1972).) Here, however, no objection to these instructions other than the sufficiency of the evidence has been argued to this court or at any other stage of these proceedings; thus we are concerned only with the objection plaintiff has specifically made to the above instructions.

■■ We observe that plaintiff's complaint included an allegation that plaintiff and his family were free from contributory negligence, which allegation was denied in defendant's answer. Considering the evidence outlined above we are of the opinion that the giving of the instructions on the contributory negligence of plaintiff and his wife was proper.

Plaintiff also contends that the trial court erred in allowing defendant, Jessie Suter, to testify concerning the standard of safety for other lake areas. First, plaintiff, argues that such evidence was not a proper subject for expert testimony; and secondly that defendant was not qualified as an expert.

Defendant Jessie Suter testified that prior to opening his campground in 1970 he checked into swimming regulations at various grounds in southern Illinois and in Indiana which were similar to defendants' campground; they had small man-made lakes with swimming by adult supervision only, no lifeguards, and they normally forbid swimming for children under 12 without supervision.

The opinion of an expert is permitted on the basis that the witness has peculiar knowledge or experience not common to the world which renders his opinion based on such knowledge and experience to aid to the trier of facts in deciding the case. (*Cannell v. State Farm Fire & Casualty Co.* (1975), 25 Ill. App. 3d 907, 912, 323 N.E.2d 418, 422.) Whether a witness qualifies as an expert is a matter within the sound discretion of the trial court. *Nowakowski v. Hoppe Tire Co.* (1976), 39 Ill. App. 3d 155, 163, 349 N.E.2d 578, 586.

■■ Custom has been held to be relevant in determining a standard of care. (See *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253.) In a tort case, custom and usage is a fact to be proved as any other fact and it may be the subject of expert testimony. *Fetterman v. Production Steel Co.* (1954), 4 Ill. App. 2d 403, 124 N.E.2d 637.

■■ Applying these statements of the law to the testimony of Jessie Suter concerning his inquiries into swimming regulations at other similar campgrounds we hold that the trial court did not abuse its discretion in allowing Suter's testimony.

For all the above reasons we affirm the judgment for defendants entered on the jury's verdict. Deciding the case as we do we need not

discuss the other contentions raised by plaintiff relating to the issue of damages.

Affirmed.

BOYLE, J., concurs.

Mr. JUSTICE NASH, dissenting:

I respectfully dissent. This was a wrongful death action brought by the administrator of decedent's estate on behalf of decedent's parents and five brothers and sisters (Ill. Rev. Stat. 1969, ch. 70, par. 2). The jury was correctly instructed that contributory negligence on the part of decedent would bar all recovery, but it was also instructed at the request of defendants, over plaintiff's objection, that contributory negligence on the part of decedent's parents would also bar all recovery. That, of course, is not the law and I cannot agree with the determination of the majority that the giving of instructions regarding contributory negligence of the parents was proper in this case.

Contributory negligence of decedent's parents, or of any other person entitled to share in an award made under the act, does not relate to the liability of a defendant at all; if present, it would only preclude the negligent relative from sharing in an award. Negligence of the relative cannot be imputed to a decedent and cannot be interposed by a defendant as contributory negligence barring recovery by an estate under the Wrongful Death Act. (*Sheley v. Guy* (1975), 29 Ill. App. 3d 361, 366, 330 N.E.2d 567, 571, *aff'd* (1976), 63 Ill. 2d 544, 348 N.E.2d 835; *Duffy v. Cortesi* (1954), 2 Ill. 2d 511, 119 N.E.2d 241; *Rahn v. Beurskens* (1966), 66 Ill. App. 2d 423, 213 N.E.2d 301.) As has been provided by section 2 of the Wrongful Death Act, since the 1955 amendments,

> "* * * it shall not be a defense that the death was caused in whole or in part by the contributory negligence of one or more of the beneficiaries on behalf of whom the action is brought, but the amount of damages given shall not include any compensation with reference to the pecuniary injuries resulting from such death, to such contributorily negligent person or persons, and such contributorily negligent person or persons shall not share in any amount recovered in such action." (Ill. Rev. Stat. 1969, ch. 70, par. 2.)

IPI Civil No. 31.08 (Illinois Pattern Jury Instructions, Civil, No. 31.08 (2d ed. 1971)) is the only correct instruction, then, which may be given on this issue.

At the conference on instructions, plaintiff submitted an issue instruction which, correctly, made no reference to contributory

negligence of decedent's parents. Defendants objected, however, and the trial court required plaintiff to resubmit the instruction with the added provision that plaintiff had the burden of proving the parents were exercising ordinary care for the decedent's safety at the time of his death. The court commented that that form was necessary as "they are the beneficiaries," but did not refer to decedent's brothers and sisters. Defendants thereupon submitted, and the trial court gave, instructions that contributory negligence of the parents barred all recovery. Plaintiff objected to the instructions as being without support in the evidence. A substantial portion of defendants' argument to the jury was directed to pointing out that it is the law that any negligence of the parents, however slight, must bar recovery.

The record does not disclose to us what authority was submitted to convince the trial court that negligence of a parent would be imputed to the decedent. In their brief, however, defendants cite *Henry v. Robert Kettell Construction Corp.* (2d Dist. 1967), 82 Ill. App. 2d 420, 226 N.E.2d 89, as authority for the proposition that contributory negligence of a parent will bar all recovery in an action for the wrongful death of a child. The cause of action in *Henry* arose in 1961; this court held that proximate contributory negligence of the parents would bar all recovery and failed to take into account the 1955 amendment to the Wrongful Death Act referred to earlier. That opinion, and the others cited by defendants in their brief in this court, also refer to pre-1955 cases which state the common law rule in effect at that time that contributory negligence of one beneficiary bars recovery of all beneficiaries. Our supreme court in *Nudd v. Matsoukas* (1956), 7 Ill. 2d 608, 131 N.E.2d 525, recognized the statutory change and all reported cases since 1955, except *Henry*, have followed it.

It appears to me that the attorneys for plaintiff and defendants and the trial court chose to be guided by *Henry*, as the last expression of the appellate court in this district, when this case was pleaded and tried. It is obvious they each assumed it correctly expressed the rule.

In this circumstance I do not believe we should perpetuate a mistake by continuing to hold the instructions complained of are proper; they are not. Plaintiff adequately raised this issue in the trial court and should not now be barred from review. The trial court, over plaintiff's objections, held that any contributory negligence of the parents would bar all recovery and so instructed the jury. We are presented with an issue of law where all facts necessary to its determination are in the record before us; it has been briefed by all parties and is not being raised for the first time on appeal. I would reverse and remand for a new trial.