

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-2002

# Spark v. MBNA Corp

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3370

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Spark v. MBNA Corp" (2002). *2002 Decisions.* Paper 571.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/571

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NOS. 01-3370 and 01-3462

ANDREW B. SPARK, On behalf of himself and all others similarly situated,

v.

MBNA CORP.; MBNA AMERICA BANK, N.A.; MBNA MARKETING SYSTEMS,
INC.; RICHARD K. STRUTHERS; TERRANCE R. FLYNN; DAVID L. MCGOWAN;
MARK C. SULLIVAN

COPHEN E. SEARS, III, DANIEL J. HILL and
ALAN SHAPIRO,* Appellants in No. 01-3370
(* Pursuant to Rule 12(a), F.R.A.P.)

WALTER R. SCHOETTLE,* Appellant in No. 01-3462
(* Pursuant to Rule 12(a), F.R.A.P.)

On Appeal From the United States District Court
For the District of Delaware
(D.C. Civil Action No. 96-cv-00497)
District Judge:  Honorable Roderick R. McKelvie

No. 01-3370 Argued June 28, 2002
No. 01-3462 Submitted Pursuant to Third Circuit LAR 34.1(a) June 28, 2002

BEFORE:  AMBRO and STAPLETON and CUDAHY,* Circuit Judges
_____

* Honorable Richard D. Cudahy, United States Circuit Judge for the Seventh Circuit,
  sitting by designation.

(Opinion Filed        September 16, 2002        )

John X. Denney, Jr.
Tomar, Simonoff, Adourian & O'Brien
Mellon Bank Center, Suite 1701
919 Market Street - P.O. Box 955
Wilmington, DE 19801
  and
Daniel A. Edelman
Cathleen M. Combs
James O. Latturner (Argued)
Edelman, Combs & Latturner
120 South LaSalle Street - 18th Floor
Chicago, IL 60603
  Attorneys for Appellee Andrew B. Spark and
  all others similarly situated

Sharon L. Nelles
Richard C. Pepperman, II (Argued)
Sullivan & Cromwell

125 Broad Street
New York, NY 10004
   and
Kathleen M. Jennings
Oberly & Jennings
800 Delaware Avenue - P.O. Box 2054
Wilmington, DE 19899
   Attorneys for Appellees MBNA Corp., MBNA
   America Bank, N.A., MBNA Marketing Systems,
   Inc., Richard K. Struthers, Terrance R. Flynn,
   David L. McGowan and Mark C. Sullivan

John J. Pentz (Argued)
The Objectors Group
43 Kendall Road
Sudbury, MA 01776
   Attorney for Appellants Cophen E. Sears, III,
                              Alan Shapiro and Daniel J. Hill


OPINION OF THE COURT



STAPLETON, Circuit Judge:

I.

On May 3, 1996, Andrew B. Spark filed a complaint against MBNA America Bank and certain of its officers and affiliated corporations. He alleged that the defendants had fraudulently and deceptively marketed a promotional rate of interest for the Bank's credit card. The following summary of the ensuing proceedings, taken from the Defendant-Appellees Brief, accurately reflects the record:

> . . .On February 20, 1998, the District Court granted plaintiff's motion to certify a class consistent of all persons who:
>
> > a. were sent advertising by MBNA Corporation promoting a special low introductory (6.9%-9.9%) annual percentage rate on cash advances and/or balance transfers;
> >
> > b. opened a credit card account with MBNA; and
> >
> > c. used the card for purchases as well as cash advances or balance transfers.
>
> SA 7-8 (Class Cert. Order). The class period spanned from May 3, 1991 through May 3, 1996. SA8.
>
> After discovery and further motion practice, the District Court directed the parties to mediation before Magistrate Judge Thynge. . . . At the conclusion of the second day of mediation, the parties successfully negotiated a settlement agreement. . . . SA19 (Settlement Agmt.).
>
> The parties agreed that the estimated 1.8 million class

members would each be entitled to receive $3.57, an amount representing slightly more than half the average class members' alleged damages as calculated by plaintiff's expert. SA96 (Hearing Tr.). During the mediation, MBNA had taken the position that all class members should be required to submit a claim, and plaintiff had taken the position that every class member should receive an automatic credit. SA68-69 (Pl.'s Mem.). As a compromise, Magistrate Judge Thynge suggested, and the parties agreed, that class members with a "current-active" account would receive an automatic credit but that class members with a "current-not active" or "non-current" account would be required to submit a claim either by calling a toll-free telephone number or by returning a claim form to MBNA. SA105 (Hearing Tr.). To recover $3.57, "current-not active" and "non-current" class members need not submit actual proof of a claim; they are required only to identify themselves as a member of the class. During mediation, MBNA estimated that approximately 80% of class members had current accounts with MBNA and that, of those accounts, approximately 80% (i.e., 64% of the class) were active. SA106 (Hearing Tr.).

The parties further agreed that class counsel would petition the District Court for $1,285,200 in fees and costs to be paid by MBNA. SA22 (Settlement Agmt.). The parties also agreed that plaintiff would receive $10,000 for his services as class representative, also to be paid by MBNA. SA22-23.

The parties appeared before the District Court for a preliminary approval hearing on September 25, 2000. The District Court found that the proposed settlement was in the range of fair and reasonable, and directed that notice be sent to the class. SA42-44 (Order). With regard to the composition of the class, the forms of notice approved by the District Court stated:

> MBNA represents that, to the best of its knowledge, there are approximately 1.8 million members of the class. MBNA estimates that, of those 1.8 million class members, approximately 80% have a current account with MBNA (current class members), and approximately 20% do not have a current account with MBNA (non-current class numbers). MBNA further estimates that, of current class members approximately 80% (64% of the total) of the accounts are presently active (current-active class members).

A21; SA30 40 (Form of Notice).

In March 2001, MBNA mailed notice of the settlement to 1,838,957 potential class members by first class mail. Class members who had account activity during the period November 2000 through January 2001 were classified as "current-active" class members. SA106-07. Those class members received notice stating they will receive an automatic credit of $3.57 to their account if the settlement is approved. See SA31 (Form of Notice). The remaining class

members received notices stating that they will receive a check for $3.57 if they submit a claim and the settlement is approved. A21. Of those class members, 93,859 submitted a claim by calling the toll-free telephone number or by returning the claim form enclosed with the notice. A37 (Proposed Final Order).

As it turned out, only 41% of the class (754,960) had account activity during the period November 2000 through January 2001. A31; SA106 (Submitted Letter; Hearing Tr.). This number was lower than MBNA had previously estimated primarily because of the age of the class in this case, which reached back to 1991. A31. When plaintiff complained that less than 64% of the class would receive an automatic credit, MBNA agreed also to give an automatic credit to 421,884 "current-not active" class members, thus ensuring that 64% of the class will receive automatic credits. SA106. Those 421,884 class members were to be identified first by adding those class members with account activity after January 2001, and then, if necessary, adding those class members with the most recent account activity before November 2000. Id.

The District Court held a fairness hearing on May 24, 2001. In its opinion the Court applied the nine factor test that we articulated in Girsh v. Jepson, 521 F.2d 153 (3d Cir. 1975), and concluded that the proposed settlement was "fair, reasonable, and adequate." Spark v. MBNA Corp., 157 F. Supp.2d 330 (D. Del. 2001). It found the amount requested for attorneys' fees and costs to be "unreasonably high," however, and awarded only $590,000 of the $1,285,200 requested. In commenting on the terms of the settlement, the Court observed as follows:

> The court understands that in reaching an agreement on what the settlement would be and how it would be implemented, counsel and the parties had to make a number of practical decisions, including how to economically and efficiently distribute $3.57 to a class of 1.8 million people. The procedure the parties fixed on, a credit for current and active account holders and sending a check to others who call in to a toll free number, reflects a fair and reasonable balancing of a number of competing factors. Further, the agreement to provide a credit to an additional 421,844 class members reflects a reasonable compromise of the disagreement that arose after it became clear that the number of people who would receive the automatic credit was lower than MBNA had initially reported to plaintiff. The modification of the agreement appears to be consistent with the spirit of the parties' initial settlement agreement and should prevent MBNA from benefitting from this error.

157 F.Supp.2d at 340.

## II.

Appellant/objectors Sears, Shapiro and Hill mount three challenges in their appeal: (1) the settlement does not provide similar relief to similarly situated class members, (2) the class notice was materially inaccurate and requires a corrective mailing, and (3) the manner in which class counsel handled the automatic credit issue demonstrates the inadequacy of their representation.

## A.

These objectors do not maintain that the $3.57 to be received by all class members is unfair or unreasonable when considered in the light of the Girsh factors. Rather they insist:

> . . . The parties' agreement to give an automatic credit to only

some of MBNA's current cardholders is arbitrary and unfair.
The parties' last-minute agreement to give automatic credits
to 421,844 inactive current cardholders demonstrates that it is
indeed possible to give a credit to each and every one of them.
Therefore, every inactive current cardholder should receive an
automatic credit of $3.57, and should not be required to
submit a claim form.

Appellants' Brief p. 10.  We are unpersuaded.

Under the terms of the original and amended settlement agreements, all members of the class are appropriately entitled to receive the identical award.  The two methods of distributing those awards are neither arbitrary nor inequitable to those who do not receive an automatic credit.  As the District Court found, the distribution methods chosen were directed to legitimate practical concerns and, most important of all, do not impose a significant burden on those whom these objectors characterize as the disfavored subclass.  A toll free call in which one has only to identify oneself as a class member is not onerous.

MBNA guarantees monthly account statements only for cardholders with account activity during the preceding month.  The settlement provides that those cardholders would receive automatic credit.  This is the most efficient means of distribution to these cardholders and provides the recipient with what is likely to be a cash equivalent.  The other class members are not similarly situated.  In order to provide them with an automatic credit MBNA would be required to generate monthly statements for cardholders with no outstanding balance and with no recent activity.  Statements would have to be issued monthly for six months, after which a check would have to be issued. Even if this additional expense were assumed, however, there is a legitimate concern that the recipients of those statements would conclude that they would have to use their MBNA credit card in order to realize the settlement proceeds.  Given the recent inactivity in their accounts, the credit is unlikely to be a cash equivalent for them, and MBNA had a legitimate concern that such cardholders would think they were being manipulated into reactivating their accounts.  Even under the amended agreement, automatic credits will be credited to those class members most likely to have outstanding balances against which the credit can be applied and to those who have most recently used their card.  This did not result in an arbitrary distinction being drawn.

The objectors insist that the District Court erred in treating the "anticipated payment of $4.2 million as having some independent significance."  Objs. Brief p. 16. We agree with appellees that this payout did have independent significance.  Class counsel insisted that 64% of the class receive automatic credits, consistent with MBNA's original estimate of the number of "current-active" cardholders in the class.  When it turned out that only 41% of the class were "current-active" cardholders - and class counsel objected - MBNA agreed to provide additional automatic credits in a rational way.  We decline the appellants' invitation to fashion an across-the-board rule requiring that all settlements involving a "de minimis" pay out (i.e., "less than $10") to class members provide only for an automatic credit or disbursement.  While employing a claims process in such settlements may result in unfairness in some contexts, it is not inherently inconsistent with a fair and reasonable settlement, as this case demonstrates.

B.

These objectors also argue before us that the notice to class members is materially misleading and was known to be such when dispatched.  They point to the statement in the notice that MBNA estimated that 64% of the class were current active cardholders and would thus receive an automatic credit.  These objectors stress the fact that this estimate was known to be an overestimate at the time of the mailing.

The District Court did not abuse its discretion.  The notice accurately reports the fact that the settlement commits MBNA to give an automatic credit to all "current active" class members.  Thus, any "current active" cardholder could count on receiving a credit.  While MBNA learned, four months after the approval of the form of the notice but before its actual mailing, that its "estimate" of the number of "current actives" was too high, the failure to amend the notice was not materially misleading. When it was discovered that only 41% of the class were "current active" cardholders, the

District Court permitted the parties to remedy the situation by providing an automatic credit to additional class members so that a total of 64% of the class would receive automatic credits. There thus was no material discrepancy between the notice and the settlement ultimately approved. Each class member who received a notice advising that he or she would receive an automatic credit will receive one and 64% of the class will receive such credits as the notice represented. The only difference is that some members who were told that they would have to submit a claim in order to receive payment will now receive an automatic credit. Accordingly, the modification of the agreement did not have an adverse effect on any class member. It follows that the difference between the settlement as described in the notice and the settlement as approved is not material.

C.

As suggested by the above, we find no deficiency in class counsels' handling of the situation presented when MBNA's original estimate of "current active" cardholders turned out to be too high.

III.

Appellant/objector Schoettle advances three additional arguments: (1) the requirement that objectors appear at the hearing violated due process, (2) the notice failed to provide a basis for a class member to determine his or her damages, and (3) the District Court abused its discretion in concluding that the settlement was fair and reasonable.

A.

The Due Process Clause requires that each plaintiff class member "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel" and that he or she be afforded an opportunity to "opt out." Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 812 (1985). Schoettle received this process. While considering written objections from absent class members has much to recommend it, given these and the other protections afforded members of a plaintiff class, we are confident that a court, consistent with due process, may require an objector to be present, in person or by counsel, to present his objections and respond to inquiries.

B.

Under the heading "What This Lawsuit Is About" (SA35), the notice states as follows:

> Plaintiff filed this action alleging that MBNA's representations concerning the savings resulting from the "special low introductory" interest rate on cash advances and balance transfers in connection with credit cards issued by MBNA were false and misleading because cardholders could never or virtually never receive the advertised savings if they use their cards for purchases. Plaintiff's first amended complaint alleges that MBNA's practice violated the RICO statute, constituted a breach of MBNA's implied contractual duty of good faith and fair dealing, and constituted a violation of the Delaware Consumer Protection Statutes, 6 Del. C. 2513.

In addition, the description of the class advises that those having claims (a) "were sent advertising by MBNA Corporation promoting a special low introductory (6.9%-9.9%) annual percentage rate on cash advances and/or balance transfers; (b) opened a credit card account with MBNA; and (c) used the card for purchases as well as cash advances or balance transfers, from May 3, 1991 through May 3, 1996." App. 75.

Schoettle insists that the information thus provided is insufficient to enable a class member to calculate the amount of his damages and is, therefore, insufficient to permit a determination as to whether $3.57 is fair and reasonable.

It seems to us that a class member with the information provided should be able to determine from his or her records the approximate amount of his maximum potential damages. Neither Rule 23 nor the Due Process Clause requires that the notice of settlement provide each member of the class with the kind of individualized information that would be found in a class member's personal records.

C.

As we have indicated, the District Court's opinion identifies the legally relevant factors and applies them to the facts of this case. Having considered the

conclusions there reached in light of Shoettle's challenges, we find no abuse of discretion.

IV.

The District Court's Order of August 1, 2001, will be affirmed. _____

TO THE CLERK:

Please file the foregoing not precedential opinion.

/s/Walter K. Stapleton

_____

Circuit Judg