No. 3–09–0987

Filed September 22, 2010

IN THE APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| EDITH QUICK, LISA QUICK JEFFREY QUICK, CATHY QUICK, CHARLES QUICK, JR., LISA KIBBONS, CARL KIBBONS, EVAN KIBBONS, EDITH BUCKLEY, GREGORY BUCKLEY, ELLEN BUCKLEY, JOHN PANOZZO, guardian of MARGUERITE PANOZZO, ANGELA BURGE, CHRISTOPHER BURGE, and KENNETH CLARK, | ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court for the 21st Judicial Circuit, Kankakee County, Illinois |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| SHELL OIL COMPANY; SHELL PIPELINE CORPORATION; and EQUILON PIPELINE COMPANY, LLC, | ) ) ) ) | No. 01–L–147 |
| Defendants | ) ) ) | |
| (Kyle L. Danhausen and Grant B. Danhausen, Independent Co-executors of the Will of Martha J. Danhausen, deceased, | ) ) ) ) | |
| Class Members and Claimants-Appellants; | ) ) ) | |
| THOMAS M. EWERT, Settlement Administrator, | ) ) ) | Honorable Gordon L. Lustfeldt, |
| Appellee.) | ) | Judge, Presiding. |

JUSTICE CARTER delivered the opinion of the court:

The Danhausen estate appeals from a decision of the trial court approving the distribution of funds from the settlement of a class action suit against Shell Oil Company and other defendants (collectively Shell). Thomas M. Ewert, the settlement administrator (Settlement Administrator), recommended that the Danhausen estate be awarded a total of $120,489. The Danhausen estate, however, claims it is entitled to $4,689,200. Class counsel has responded to the Danhausen estate's arguments on appeal and contends that the trial court's decision should be affirmed. We agree with class counsel and affirm the award approved by the trial court.

FACTS

The instant case arises out of a release of thousands of gallons of gasoline in November 1988 from a Shell pipeline onto the Danhausen farm in Limestone Township, Kankakee County, Illinois. In 2001, suit was filed against Shell seeking damages for property damage and personal injuries allegedly caused by the gasoline release. In 2005, the case was removed to federal court, and two property damage subclasses were certified in January 2007. In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation, 241 F.R.D. 435 (S.D.N.Y. 2007). In December 2007, the federal court remanded the action to the Kankakee County circuit court after it was determined that the case had been improperly removed.

On December 12, 2007, the parties filed a joint motion for preliminary approval of class settlement, which was granted. Notice was sent to the class members. The court held a hearing on final approval of the settlement on February 28, 2008. On March 26, 2008, the court entered an order certifying the class for purposes of settlement and granting final approval of the proposed settlement. The settlement agreement defined the class as "all current owners of real property in the Outer Area and Core Area, as defined on the map attached [to the settlement agreement], and

2

all people who resided or owned property within the Core Area from November 1, 1988, to the date of Final Approval." The court found that the settlement was fair and reasonable. The settlement agreement provided a fund of $26 million to be distributed by a settlement administrator. Specifically, the fund was provided to:

> "reimburse Class Members within the Core Area for any and all damages they have claimed or may have claimed for any and all damages as a result of the release of MTBE and/or gasoline *** (including, but not limited to, claims for diminished property value, unreimbursed past and future costs of obtaining alternative water such as water bills or payment for bottled water, past and future lost rent, nuisance, past easements and access, costs for connections to water mains, investments in private wells and interference with quiet enjoyment of property), except for claims for personal injury, which are excluded from this Settlement."

In addition, the fund was to be distributed to provide class members in the Outer Area with an amount sufficient to test well water for methyl tertiary butyl ether (MTBE) contamination and to provide potable water if MTBE was detected in those wells. The settlement agreement also provided to connect residences in the Core Area to a public water system.

The court appointed former Judge Thomas M. Ewert to administer the settlement. Under the settlement agreement, the Settlement Administrator shall decide whether a claimant submitted adequate proof to establish that he or she was a class member, the amount of each claim to be allowed, the time when payment of a claim shall be made, and, subject to court approval, the amount of the initial distribution and any reserve. There was no appeal of the court's order

3

granting final approval of the settlement.

On November 26, 2008, the Settlement Administrator filed a report of his findings and recommendations regarding the distribution of settlement funds and requested that the court order distribution accordingly. Regarding claims for diminished property values, the Settlement Administrator consulted a licensed real estate appraiser, Jay M. Heap. Heap concluded that the diminution in value of property in the Core Area linked to the 1988 gasoline spill was less than 5%. The Settlement Administrator used the assessed valuation of improved property, using figures provided by the Kankakee County assessor's office, to approximate the current market values of that property. For agricultural property, the Settlement Administrator determined that the assessed valuation of that property was not related to its market value. Heap concluded that the average value of agricultural property in Limestone Township was approximately $5,000 per acre, and the Settlement Administrator used that amount when determining the current market value for such property. The Settlement Administrator also concluded that the claimants who lived in the Core Area should be awarded $150 per year for each year they lived at a property in the Core Area since 1988 as recompense for nuisance and interference with quiet enjoyment. Those who lived in closest proximity to the spill, along 4000 W. Road, should be awarded an additional $250 per year for each year that they lived at that location.

The Danhausen estate submitted a claim dated March 25, 2008. The Danhausen estate revoked its previous election to opt out of the settlement dated February 14, 2008. The claim listed eight different parcel numbers, broken into six tracts.

Included in the record are copies of the Settlement Administrator's calculation sheets on the claim submitted by the Danhausen estate for eight parcels of property. Five of the Danhausen

4

estate parcels were for agricultural land in the Core Area. The Settlement Administrator applied the $5,000-per-acre value to these parcels and calculated a total distribution for diminution in value of these parcels at $78,250.

One claim was for a parcel that included a home in the Core Area that was also in close proximity to the spill. The distribution amount for that parcel included an award for diminution in value, the cost of bottled water, the future increased cost of water, and the cost of a lost well. In addition, the recommended distribution for this parcel included an award for nuisance calculated at $150 per year and at $250 per year. The total value of this claim was calculated at $28,382.

The seventh claim by the Danhausen estate was for rental property. The value of this claim included diminution in value of the property, a lost well and nuisance calculated at $150 per year. The total value of this claim was $13,857. The eighth claim was denied because the property was in the Outer Area and did not have a well on it. The total value of the Danhausen estate's claims was $120,489.

On December 5, 2008, the Danhausen estate filed an objection to the recommendation of the Settlement Administrator. The Danhausen estate objected to the Settlement Administrator's valuation of the farmland parcels at $5,000 per acre, claiming the Settlement Administrator did not apply the highest and best use when valuing these parcels because they were zoned residential rather than agricultural. The Danhausen estate also argued that it was inequitable to apply the same formula when valuing its claim as applied to other claimants because the spill occurred on the Danhausen estate's property. The Danhausen estate claimed that the diminution in value of its property totaled $1,172,300 and claimed entitlement to an award of $3,516,900 for nuisance and interference with quiet enjoyment of its property. In total, the Danhausen estate claimed it was

5

entitled to $4,689,200. The Danhausen estate based its claim for diminution in value upon an appraisal conducted by real estate broker Richard F. Hansen.

On December 16, 2008, the court entered an order establishing procedures for public hearings on objections by claimants to the recommendations of the Settlement Administrator. The court stated that any hearing would be conducted in accordance with the Administrative Review Law (735 ILCS 5/3–111 (West 2008)) and that it reserved the right to consider any equitable matters that were useful or required. The court further stated that there would be no discovery, no additional evidence would be presented at a hearing, and the burden of proof would be on the objector.

Following a hearing on the objection filed by the Danhausen estate, on July 8, 2009, the court approved the recommended distribution by the Settlement Administrator. The court found that Shell had occupied a 40-acre tract of the Danhausen estate's property since 1988 and had paid an undisclosed amount of rent to Ms. Danhausen and later to her estate. The court further found that a portion of that rent compensated the Danhausen estate for nuisance and interference with quiet enjoyment caused by Shell's activities on that property. In addition, the court found that there was no evidence that Ms. Danhausen had ever made an attempt to subdivide the property for residential development or that it would have been economically feasible to do so. On August 6, 2009, the Danhausen estate filed a motion to reconsider, which was denied. The Danhausen estate then filed the instant appeal.

ANALYSIS

Before reaching the merits of this appeal, we must consider the proper standard of review. The Danhausen estate claims that we should treat this appeal as an administrative review of the

6

Settlement Administrator's recommendation and utilize the manifest weight of the evidence standard. Class counsel, who has responded to this appeal, contends that we should treat this matter as an equity case and apply an abuse of discretion standard. We reject both of these arguments. Regardless of any statement by the trial court that it would employ a procedure like that of an administrative review, the recommendation of the Settlement Administrator was not a decision by an administrative agency. Article III of the Code of Civil Procedure does not apply here. See 735 ILCS 5/3–102 (West 2008). Additionally, distribution of the class settlement was not an equity proceeding.

Rather, this was a settlement of a class action, and a class action is a statutory creature. 735 ILCS 5/2–801 et seq. (West 2008). A court order approving the distribution of funds in a class action settlement is an outgrowth of the final approval of the settlement agreement. See 735 ILCS 5/2–807(b) (West 2008). Indeed, it appears that a distribution plan is often included in a settlement agreement and approved as a part of it. See 735 ILCS 5/2–807(b) (West 2008); see, e.g., In re Ikon Office Solutions, Inc. Securities Litigation, 194 F.R.D. 166 (E.D. Penn. 2000). We conclude, therefore, that the appropriate standard of review in this case is the standard applied to appeals of court orders approving a class action settlement. See In re "Agent Orange" Product Liability Litigation MDL No. 381, 818 F.2d 179, 181 (2d Cir. 1987) (allocation of class settlement reviewed for an abuse of discretion); Ikon Office Solutions, Inc., 194 F.R.D. at 184 (" 'Approval of a plan of allocation of a settlement fund in a class action is "governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate" ' [Citations.] "). In Illinois, decisions concerning final approval of class action settlements are reviewed for an abuse of discretion. Gowdey v. Commonwealth

Edison Co., 37 Ill. App. 3d 140, 149, 345 N.E.2d 785, 793 (1976); People ex rel. Wilcox v. Equity Funding Life Insurance Co., 61 Ill. 2d 303, 316, 335 N.E.2d 448, 455 (1975).

On the merits, the Danhausen estate claims that the Settlement Administrator's recommended award failed to include adequate compensation for the diminution in value of its property and for nuisance and interference with quiet enjoyment of the property. The Danhausen estate requests that the award approved by the trial court be set aside and that this court enter an award of $1,172,300 for diminution in value and $3,516,900 for nuisance and interference with quiet enjoyment. Class counsel maintains that the court order approving the Settlement Administrator's recommended distribution should be affirmed.

Generally, a decision of the trial court is an abuse of its discretion when the ruling is arbitrary, fanciful or unreasonable or when no reasonable person would take the same view. Ramirez v. Midway Moving & Storage, Inc., 378 Ill. App. 3d 51, 53, 880 N.E.2d 653, 656 (2007). When evaluating the settlement of a class action, the court must determine whether the settlement agreement is fair, reasonable and adequate. Steinberg v. System Software Associates, Inc., 306 Ill. App. 3d 157, 169, 713 N.E.2d 709, 717 (1999). "A trial court's approval of a settlement should not be overturned on appeal unless, taken as a whole, the settlement appears on its face so unfair as to preclude judicial approval." City of Chicago v. Korshak, 206 Ill. App. 3d 968, 972, 565 N.E.2d 68, 70 (1990).

In this case, the court approved the Settlement Administrator's recommendation to distribute $120,489 of the settlement fund to the Danhausen estate. Regarding the award for diminution in value of the Danhausen estate property, the court found Heap's appraisal to be worthy of greater weight than that of Hansen, due to Heap's credentials and experience. We have

8

reviewed both Heap's and Hansen's appraisals and cannot find that the trial court's decision in this regard was arbitrary, fanciful or unreasonable. In addition, considering the large number of claimants and the lengthy time period that has elapsed since the gasoline spill, we cannot find that the trial court's decision to approve the Settlement Administrator's use of a formulaic approach to approximate agricultural property values and the diminution in value of those pieces of property was unfair, unreasonable, or inadequate. Thus, the trial court's decision to approve the Settlement Administrator's award to the Danhausen estate for diminution in value was not an abuse of discretion.

We also conclude that the trial court did not abuse its discretion by approving the recommended distribution to the Danhausen estate for nuisance and interference with quiet enjoyment of its property. The Danhausen estate maintains it is entitled to more than $3 million for this claim. However, it does not provide any legal or factual support for its claim. On the other hand, the Settlement Administrator's formula for compensating Core Area property owners for nuisance and interference with quiet enjoyment of their property, taken as a whole, was fair, reasonable and adequate. While it is undisputed that the gasoline spill occurred on the Danhausen estate's property, it did not present adequate evidence that it was entitled to a larger distribution of the settlement fund for these damages.

CONCLUSION

We conclude that the proper standard of review in this matter is to determine whether the trial court abused its discretion by approving the recommended distribution from the settlement fund to the Danhausen estate. Utilizing this standard of review, we determine that the trial court did not abuse its discretion by approving the award as recommended by the Settlement

9

Administrator.  Accordingly, the judgment of the Kankakee County circuit court is affirmed.

Affirmed.

SCHMIDT and MCDADE J. J. concurring.