2016 IL App (2d) 150236
Nos. 2-15-0236 & 2-15-0326 cons.
Opinion filed March 23, 2016

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SHAUN FAULEY, SABON, INC.; SANDY ROTHSCHILD AND ASSOCIATES, INC.; DEBAUN DEVELOPMENT, INC.; and CHRISTOPHER LOWE HICKLIN DC PLC, Individually and as the Representatives of a Class of Similarly Situated Persons, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellees, | ) ) | |
| v. | ) ) | No. 14-CH-1518 |
| METROPOLITAN LIFE INSURANCE CO., STORICK GROUP CO., THE STORICK GROUP, SCOTT R. STORICK, and JOHN DOES 1-10, | ) ) ) ) ) | |
| Defendants-Appellees | ) ) | Honorable Luis A. Berrones, |
| (Judd Clayton, Jr., Objector-Appellant). | ) | Judge, Presiding. |

| | | |
|---|---|---|
| SHAUN FAULEY, SABON, INC.; SANDY ROTHSCHILD AND ASSOCIATES, INC.; DEBAUN DEVELOPMENT, INC.; and CHRISTOPHER LOWE HICKLIN DC PLC, Individually and as the Representatives of a Class of Similarly Situated Persons, | ) ) ) ) ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiffs-Appellees and Cross-Appellants, | ) ) ) ) | |
| v. | ) ) | No. 14-CH-1518 |
| METROPOLITAN LIFE INSURANCE CO., STORICK GROUP CO., THE STORICK | ) ) ) | |

GROUP, SCOTT R. STORICK, and JOHN ) 
DOES 1-10, )
         )
        Defendants-Appellees )
         ) Honorable
(Austin Distributing, Objector-Appellant and ) Luis A. Berrones,
Cross-Appellee). ) Judge, Presiding.

_____

JUSTICE McLAREN delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1     Objectors, Judd Clayton, Jr., and Austin Distributing, appeal the trial court's final approval of a settlement in a class-action fax-blasting lawsuit. Plaintiffs, Shaun Fauley, Sabon, Inc., Sandy Rothschild & Associates, Inc, Debaun Development, Inc., and Christopher Lowe Hicklin DC PLC (class representatives), individually and as the representatives of a class of similarly situated persons, filed the lawsuit against defendants, Metropolitan Life Insurance Company, Storick Group Company, The Storick Group, Scott R. Storick, and John Does 1 through 10 (collectively MetLife). Objectors objected to the settlement reached by the class-action parties. The trial court considered the objections and approved the settlement, which included a common fund of $23 million and attorney fees of over $7.6 million. On appeal, objectors argue that the trial court erred by approving the settlement, because: (1) the due-process rights of the class were violated; (2) class counsel was inadequate; (3) the class representatives were inadequate; and (4) the attorney-fee award was excessive. The class representatives cross-appeal, arguing that the trial court erred by denying their motion to strike Austin's objection. We affirm the trial court's final approval of the settlement. We dismiss the class representatives' cross-appeal appeal as moot.

¶ 2                              I. BACKGROUND

¶ 3    On July 28, 2014, class representatives filed a class action complaint against MetLife, alleging that MetLife sent facsimile advertisements in violation of the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227 (2012)) and seeking $500 in statutory damages for each violation.

¶ 4    On July 30, 2014, two days after filing their complaint, the class representatives filed a motion for "Preliminary Approval of Class Action Settlement." The attached settlement agreement created a common fund of $23 million to be paid by MetLife, from which the class representatives' counsel, Anderson & Wanca (class counsel), would receive approximately $7.6 million and each class representative would receive $15,000. In addition, the settlement agreement provided that C-Mart and Richard Cadenasso would each receive $15,000 from the common fund.

¶ 5    C-Mart and Cadenasso were class representatives in three fax-blast class action lawsuits against MetLife that were filed before this case in other jurisdictions. C-Mart and Cadenasso, like the class representatives here, were represented by Anderson & Wanca. These three prior lawsuits were dismissed after discovery and mediation.

¶ 6    The settlement agreement in this case also provided that, from the remainder of the $23 million common fund, all class members could submit claims and receive: (1) $150 to $250 per fax, for up to 10 faxes; (2) a *pro rata* share, up to $100 per fax, for a maximum of 10 faxes (where indicated by the record of transmission); or (3) a *pro rata* share up to $50 (if the claimant submitted a sworn statement). Any checks issued to claimants that were not cashed would be paid to certain named charities (the *cy pres* provision).

¶ 7    On August 7, 2014, the trial court granted preliminary approval of the proposed settlement agreement, certified the class, and found that the proposed forms of notice satisfied the requirements of due process under the Illinois and United States Constitutions (Ill. Const.

1970, art. I, § 2; U.S. Const., amends. V, XIV) and section 2-803 of the Code of Civil Procedure (Code) (735 ILCS 5/2-803 (West 2014)).  The trial court's written order provided:

> "The Settlement Agreement proposes notice to the Settlement Class by: (i) facsimile [direct notice], (ii) publication in USA Today on three (3) occasions, and (iii) by maintaining a settlement website.  The Court finds that such proposed notice satisfies the requirements of due process under the Illinois and United States Constitutions and 735 ILCS 5/2-803.  The Court approves the form of the [direct] Notice."

¶ 8      The direct notice was sent to those who received faxes during the relevant time period as determined by MetLife's electronic records.  The direct notice explained that class members were those who received unsolicited facsimile advertisements or faxes that did not contain opt-out language as required by the TCPA.  The direct notice briefly described the lawsuit as alleging that MetLife violated the TCPA by sending "unsolicited advertisements by fax."  The direct notice explained that, although MetLife denied the allegations and raised defenses, MetLife had created the $23 million settlement fund.  The direct notice described the three types of relief available to class members and explained who represented the class; it further relayed that class counsel would request a $15,000 incentive award for each of the class representatives and an award of attorney fees equal to "one-third of the settlement fund."  The direct notice provided the following four options: (1) "Submit a Proof of claim (attached) to receive a check"; (2) "Do nothing" and be bound by the settlement, but "you will not receive any money"; (3) "Opt out of the settlement"; or (4) "Object to the settlement."  Regarding instructions on how to object to the settlement, the direct notice provided:

> "**Object to the Settlement:**  If you wish to object to the settlement rather than excluding yourself, you must file a written objection with the Clerk of the Circuit Court of Lake County, 18 N. County St., Waukegan, Illinois 60085.  Your objection must be filed by

[October 14], 2014, and must contain the name and number of this case (as indicated at the top of this notice). You must also serve copies of your objection on Class Counsel and Defendants' attorneys (identified above), postmarked by the same date. Your objection must include your name, fax number, and street address, along with a statement of the reasons why you believe the Court should find that the proposed settlement is not in the best interests of the Settlement Class. It is not sufficient to simply state that you object; you must state your reasons. Additionally, if you want the Court to consider your objection, then you must also appear at the final approval hearing in Room C-301, on [November 14], 2014 at [9:00 a.m.] You are not required to attend this hearing unless you object to the settlement." (Emphases in original.)

The direct notice also provided:

"**WHERE CAN YOU GET MORE INFORMATION?** This Notice only summarizes the litigation and the settlement. To see the complete file, including a copy of the settlement agreement, you may visit the office of the Clerk of the Circuit Court of Lake County, 18 N. County St., Waukegan, Illinois 60085. The clerk will make the files relating to the lawsuit available to you for inspection and copying at your own expense. If you have specific questions, you can write to Class Counsel at the address listed above. Include the case number, your name, your fax number, and your current street address on any correspondence. You may also call attorney Brian J. Wanca, Class Counsel, at ***.

* * *

**TO FILE YOUR CLAIM, GO TO:** http://www.class-settlement.com

Enter your unique USER ID & PASSWORD and follow the easy online instructions." (Emphases in original.)

¶ 9      The publication notice defined the class and indicated that class members could be entitled to a portion of the $23 million fund for unsolicited faxes.  The publication notice provided in part:

"Claim forms are available from the claims administrator or the website listed below.  Claim forms are due by <u>November 26, 2014</u>.  If you wish to object to the settlement, you must identify yourself as a class member and state the reason for and file and serve your objection by <u>October 14, 2014</u>, and you must appear at the Court hearing on <u>November 14, 2014</u>."  (Emphases in original.)

The publication notice referred class members to www.termlifeinsurancetcpasettlement.com.  The record indicates that this website contained a link to the proposed settlement and the preliminary approval order, which provided, "Settlement Class members who wish to opt out of the settlement *** are required to serve a written request for exclusions *** on the parties or their designated agent *** on or before Oct. 14, 2014."

¶ 10      Austin filed an objection to the proposed settlement, arguing that the settlement amount was too low in relation to the amount of potential damages, the award of attorney fees was too high, the *cy pres* award was a breach of class counsel's fiduciary duty to the class, and the cy pres award established that class counsel was inadequate.

¶ 11      Clayton received direct notice of the settlement and submitted a claim.  Thereafter, Clayton filed an objection to the settlement, arguing that the settlement amount was unfair relative to the TCPA penalties, the award of attorney fees was excessive, and the direct notice to the class was not the "best notice practicable," because it did not provide access to relevant court documents on a public website.  In addition, Clayton joined and incorporated Austin's objection.  The class representatives filed a brief in support of final approval of the settlement.

¶ 12    The class representatives also filed a motion to strike Austin's objection, alleging that Austin failed to provide information required by the trial court's preliminary approval order, such as a fax number and address.  The class representatives also alleged that Austin failed to show class membership and that the settlement administrator could not locate Austin in MetLife's database listing the recipients of the faxes.  The trial court denied the class representatives' motion to strike.

¶ 13    Austin issued a subpoena requesting a settlement agreement relating to the case Old National Bank v. Anderson, Cook Co. Cir. Ct., No. 2014 CH 06229.  In that case, Old National Bank sought relief against Wanca and Anderson & Wanca, alleging that Wanca fraudulently transferred funds to avoid a $3.35 million debt.  After the instant class-action lawsuit was filed, Wanca and Anderson & Wanca entered into a settlement agreement with Old National Bank, and the case was voluntarily dismissed.  The class representatives, Wanca, and Anderson & Wanca filed a motion to quash Austin's subpoena for the Old National Bank settlement agreement, and the trial court granted their motion.

¶ 14    Austin also issued a subpoena requesting "[a]ny and all records of [class counsel's] time and costs advanced in [this case]."  The class representatives and class counsel filed a motion to quash the subpoena and for a protective order pursuant to Illinois Supreme Court Rule 201(c) (eff. July 1, 2014).  The trial court granted the request for class counsel's time records, to be submitted for *in camera* inspection pursuant to a protective order.

¶ 15    After a fairness hearing held on January 16, 2015, the trial court issued a written order on February 27, 2015, in which it overruled in part and sustained in part objectors' objections.  The trial court summarized the facts and the proposed settlement as follows.  The class representatives filed their class-action lawsuit alleging violations of the TCPA.  Section 227(b)(3)(B) of the TCPA provides that a person may recover $500 in damages for each

violation. 47 U.S.C. §227(b)(3)(B) (2012). The class representatives and MetLife agreed to settle the lawsuit for $23 million. This settlement occurred during the pendency of several similar cases in other jurisdictions with different class representatives, which ultimately were dismissed. Each class representative here will receive an incentive award of $15,000. C-Mart and Cadenasso, who served class representatives in lawsuits that were dismissed, will each receive an incentive award of $15,000. Class counsel will receive attorney fees of approximately $7.6 million and be reimbursed for costs and expenses in the amount of $592,094. Class members will be paid $250, $85, or $42.50, depending on whether they submit level-one, level-two, or level-three claims. The checks issued to class members but not cashed will be paid as a *cy pres* award: 50% to the Lake County Bar Association and 50% to various charities.

¶ 16   The trial court identified the following objections: (1) the amount of information provided relating to the proposed settlement; (2) the amount of the settlement; (3) Anderson & Wanca being class counsel; (4) the *cy pres* award; (5) the amount of the attorney fees; and (6) the named plaintiffs being class representatives. The trial court analyzed the proposed settlement and the objections under the eight-factor test set forth in *City of Chicago v. Korshak*, 206 Ill. App. 3d 968, 972 (1990), to determine whether the proposed settlement was fair, reasonable, and in the best interests of the class members. The trial court discussed each factor in turn: (1) the strength of the class representatives' case balanced against the amount of the proposed settlement; (2) MetLife's ability to pay; (3) the complexity, length, and expense of further litigation; (4) the amount of opposition to the proposed settlement and the reaction of the class members to it; (5) the presence of collusion in reaching the settlement agreement; (6) the opinion of competent counsel; (7) the stage of the proceedings and the amount of discovery completed; and (8) the amount of attorney fees. See *id.*

¶ 17   Regarding the first factor, the strength of the case balanced against the amount of the proposed settlement, the trial court determined that the application of this factor addressed two of the objections: the insufficiency of information relating to the proposed settlement and the inadequacy of the settlement amount. The trial court was provided with "a substantial amount of information regarding the litigation *** and each side's perceived strengths and weakness[es] [including] confidential mediation submissions that ultimately led to settling this case and later with class counsel's time records." Based on this information, the trial court found that MetLife had "some strong defenses that would result in substantial additional litigation and pose a real risk to a successful outcome for [class] plaintiffs." The trial court found that "the potential damages for a class of 2,792,213 members, or even the 1,892,792 [$500 each = over $946 million] class members contacted, are substantially more than the settlement amount; balanced against the strength of defendant's possible defenses this factor weighs in favor of settlement."

¶ 18   The trial court found that the second factor, MetLife's ability to pay, favored approval of the settlement.

¶ 19   Regarding the third factor, the complexity, length, and expense of further litigation, the trial court found that MetLife asserted several defenses, raising complex issues, that would "require additional litigation to resolve" and require the parties to incur additional expense, substantial time, effort, and resources. The trial court therefore found that this factor weighed in favor of the settlement.

¶ 20   Regarding the fourth factor, the amount of opposition and the reaction of class members to the settlement, the trial court found that 1,892,782 direct notices were sent to class members and 50,000 claims were made, but only two objections were filed. The trial court found that the opposition was "*de minimis*" and that this factor weighed in favor of approving the settlement.

¶ 21     Regarding the fifth factor, the presence of collusion in reaching the settlement agreement, the trial court stated that this factor addressed objectors' objection regarding Anderson & Wanca's adequacy as class counsel.  The trial court stated that the proposed settlement was the product of "extensive negotiations that included multiple third-party mediation sessions." Further, the amount of the proposed settlement was the "second highest" for a TCPA case. Objectors had provided no evidence that the proposed settlement was not the product of "good-faith, arm's-length negotiations."  Objectors had provided no evidence that class counsel breached its fiduciary duty to any class member.  The trial court wrote the following in a footnote:

> "The objectors attempt to create a conflict between the Anderson & Wanca firm and the class members by submitting evidence of an unrelated lawsuit against Anderson & Wanca and the multi-million dollar payment obligation that Anderson & Wanca has in that case.  The objectors then ask the Court to conclude that because the payment obligation and the amount of attorney's fees requested in this case are comparable amounts that Anderson & Wanca breached its fiduciary duty to the class members by entering into the proposed settlement.  The objectors, however, fail to provide any evidence that this multi-million dollar payment obligation influenced any action taken by Anderson & Wanca in this case.  Absent additional evidence from the objectors the Court has no basis upon which it can reach this conclusion."

The trial court also found that the *cy pres* award was proper and that overall the fifth factor weighed in favor of approving the settlement.

¶ 22     Regarding the sixth factor, the opinion of competent counsel, the trial court found, "[c]lass counsel has extensive experience in the prosecution of TCPA cases and it is class counsel's opinion that the proposed settlement is fair, reasonable, and in the best interest of all

class members." The trial court found this opinion supported by retired Judge Terrance J. Brady, who set forth class counsel's experience and competency in support of its request for attorney fees. The trial court found that the sixth factor weighed in favor of approving the settlement.

¶ 23    Regarding the seventh factor, the stage of the proceedings and the amount of discovery, the trial court found that, although the case was in the early stages of litigation, substantial discovery and motion practice had been completed, as had the litigation in the dismissed cases in other forums. The parties had sufficient information to evaluate the merits of their respective positions and, therefore, this factor weighed in favor of approving the settlement.

¶ 24    Regarding the eighth factor, the amount of attorney fees, the trial court, citing *Brundidge v. Glendale Federal Bank, F.S.B.*, 168 Ill. 2d 235, 238 (1995), stated that "[a]n award of fees under the common fund doctrine may be determined by the percentage-of-the-award method or by the [lodestar] method at the court's discretion. *Id*. at 244." The trial court found that class counsel's time records showed "the substantial amount of time, expense and effort expended in litigating this case [and that] class counsel accepted a substantial risk in prosecuting this case under a contingency fee agreement given the vigorous defense of the case." The trial court found that there was no reason to award attorney fees under the lodestar method instead of the one-third percentage-of-the-award method.

¶ 25    The trial court overruled all of the objections it had identified to the final approval of the settlement agreement except for the objection relating to the adequacy of the settlement as it related to the payment of the incentive awards to C-Mart and Cadenasso. The trial court withheld for 14 days the entry of an order approving the settlement, to provide the class representatives and MetLife an opportunity to revise the settlement to conform to the court's findings and ruling and to adjust the payment amounts to account for an additional $30,000 available for distribution to the class members. The trial court also ruled that, if the parties failed

to revise the settlement to conform to the court's findings and ruling, the court would enter an order denying the class representatives' motion for final approval of the settlement.

¶ 26    On March 2, 2015, Clayton renewed his objection to any revised settlement.

¶ 27    On March 3, 2015, the settling parties revised the settlement, eliminating the incentive awards to C-Mart and Cadenasso, and provided a proposed final approval order to the trial court. On March 6, 2015, the trial court entered the final approval order and overruled the objections, based on its findings from the January 16, 2015, final fairness hearing and the February 27, 2015, written order.

¶ 28    Clayton filed a notice of appeal on March 6, 2015, and an amended notice of appeal on March 16, 2015.  Austin filed its notice of appeal on April 2, 2015.  On April 13, 2015, the class representatives filed their notice of cross-appeal, appealing the trial court's denial of their motion to strike Austin's objection.  This court consolidated the appeals.

¶ 29                                    II. ANALYSIS

¶ 30    Initially, we address Clayton's motion to strike the class representatives' brief because its statement of facts is a "[p]etulant attack on the character of Objectors and their counsel" in violation of Illinois Supreme Court Rule 341(h)(6) (eff. Feb. 6, 2013) (requiring an appellant's brief to contain a statement of facts with "facts necessary to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal").  We note that the argument section of Austin's brief contains similar attacks on the character of class counsel, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) (requiring that the argument section contain "the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").  We do not condone this conduct.  Although attorneys in high-stakes civil cases often find their veracity and reputations under attack, they must remember that they are members of an

honorable profession and that personal and hyperbolic attacks of the type made by the attorneys here do not serve our system of justice. Further, such attacks do not take the place of factual or legal analysis. We also note that the parties' use of string citations to federal court decisions and Illinois trial court decisions is neither helpful nor persuasive. However, the parties' flagrant improprieties are not so egregious as to hinder our review of the facts or the issues. See *John Crane Inc. v. Admiral Insurance Co.*, 391 Ill. App. 3d 693, 698, (2009). Therefore, we deny Clayton's motion to strike the class representatives' brief, but we will disregard any unsupported or inappropriate statements contained in the briefs of both the class representatives and Austin. *Id.*

¶ 31                              A. Due-Process Rights

¶ 32                                  1. Notice

¶ 33    Clayton argues that the notices violated the class members' constitutional due-process rights because they were defective and not the best notice practicable. Specifically, and for the first time on appeal, Clayton argues that the publication notice was defective because it failed to inform potential class members of their opt-out rights and the procedures to opt out. It is well settled that issues not raised in the trial court cannot be raised for the first time on appeal. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 313 (1975) (class-action objectors could not raise an argument on appeal regarding the adequacy of notice where they failed to raise it in the trial court). Because Clayton failed to challenge the sufficiency of the publication notice in the trial court, he cannot raise this issue here for the first time. See *id.*

¶ 34    Clayton also argues that the direct notice was not the "best practicable" notice, because it failed to direct potential class members to a settlement website with court documents, such as the settlement documents. Clayton argues more precisely that, although the direct notice directed potential class members to a website containing the notice, proposed settlement, and preliminary

approval order, the notice was misleading because it led members to believe that the website was solely for submitting claims. Clayton asserts that the website should have provided access to court documents without confusion as to whether a claim must first be submitted.

¶ 35 According to section 2-803 of the Code (735 ILCS 5/2-803 (West 2014)), "[u]pon a determination that an action may be maintained as a class action, or at any time during the conduct of the action, the court in its discretion may order such notice that it deems necessary to protect the interests of the class and the parties." However, the exercise of the court's discretion is limited by the dictates of due process. *Carrao v. Health Care Service Corp.*, 118 Ill. App. 3d 417, 429 (1983). Our supreme court has indicated that "[t]he question of what notice must be given to absent class members to satisfy due process necessarily depends upon the circumstances of the individual action." *Miner v. Gillette Co.*, 87 Ill. 2d 7, 15 (1981) (citing *Frank v. Teachers Insurance & Annuity Ass'n of America*, 71 Ill. 2d 583, 593 (1978)).

¶ 36 The United States Supreme Court has explained that due process requires notice to be the "best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950)). In addition, the "notice should describe the action and the plaintiffs' rights in it." *Id.* We review *de novo* a trial court's finding, upon approval of a class-action settlement, that notice to the class satisfied due process. See *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013).

¶ 37 The record indicates that the direct notice informed potential class members of the class action's pendency and the opportunity to object to the proposed settlement, and it provided a website containing the notice, preliminary approval order, and proposed settlement. The trial court found that the "Notice and the process by which it was sent fully complied with the

requirements of 735 ILCS 5/2-803 and due process under the Illinois and United States Constitutions, constituted the best practicable notice under the circumstances, and provided due and sufficient notice to all persons entitled to notice of settlement of this lawsuit." The record indicates that the notice was adequate and satisfied the requirements of due process. Thus, the trial court properly so found.

¶ 38    Clayton cites *Gooch v. Life Investors Insurance Co. of America*, 672 F.3d 402 (6th Cir. 2012), and *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004), to support his argument. In *Gooch*, the court of appeals held that a notice that included a website where potential class members could obtain additional information "met the due-process baseline." *Gooch*, 672 F.3d at 424. In *Mirfasihi*, the court of appeals held that, where individual notice is impossible, notice by publication in a national newspaper and a settlement website maintained by the settlement administrator are "acceptable." *Mirfasihi*, 356 F.3d at 786. Nothing in *Gooch* or *Mirfasihi* indicates that a website containing access to court documents is necessary to satisfy due process. Therefore, neither *Gooch* nor *Mirfasihi* is controlling.

¶ 39                    2. Requirement to Appear

¶ 40    Next, Clayton argues that requiring class members to appear at the fairness hearing to object to the proposed settlement violated their due-process rights under the United States Constitution, because it unreasonably deprived absent class members the opportunity to be heard. Due process requires that all class members "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel." *Phillips Petroleum Co.*, 472 U.S. at 812.

¶ 41    While our research has revealed no Illinois case on point, MetLife cites an unreported federal court of appeals case, *Spark v. MBNA Corp.*, 48 F. App'x 385 (3d Cir. 2002), which held, "we are confident that a court, consistent with due process, may require an objector to be present,

in person or by counsel, to present his objections and respond to inquiries." *Id.* at 391. Although *Spark* is not binding on this court, we find it persuasive.

¶ 42 In contrast, Clayton cites no persuasive authority to support his argument. Clayton cites only *Litwin v. iRenew Bio Energy Solutions*, *LLC*, 172 Cal. Rptr. 3d 328 (Cal. Ct. App. 2014), wherein the court determined that requiring an objector to appear at the final approval hearing violated the California Rules of Court. Clayton cites no similar Illinois rule. Therefore, *Litwin* is not persuasive. The other cases cited by Clayton are not on point or Clayton misstates their holdings. In this case, we determine that requiring class members to be present in court to object did not violate their due-process rights. See *Spark*, 48 F. App'x at 391.

¶ 43 B. Approval of Class Settlement

¶ 44 1. Standard of Review

¶ 45 Objectors attack the trial court's final approval of the class settlement. Objectors contend that our review is *de novo*. We disagree. To support their argument, objectors cite federal cases that are not binding on this court (see *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶ 78) and decisions that are factually distinguishable. In Illinois, a trial court's final approval of a class-action settlement will not be disturbed unless the trial court abused its discretion. *People ex rel. Wilcox v. Equity Funding Life Insurance Co.*, 61 Ill. 2d 303, 316 (1975); *Quick v. Shell Oil Co.*, 404 Ill. App. 3d 277, 281 (2010). In such a case, the question is not whether the reviewing court agrees with the action taken by the trial court, but whether "no reasonable person would take the view adopted by the trial court." *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005). Given that a settlement is a compromise, a trial court is not to judge the legal and factual questions by the criteria employed in a trial on the merits. See *GMAC Mortgage Corp. of Pennsylvania v. Stapleton*, 236 Ill. App. 3d 486, 493 (1992). Rather, the standard used to

evaluate the settlement of a class action is whether the agreement is fair, reasonable, and adequate. *Steinberg v. System Software Associates, Inc.*, 306 Ill. App. 3d 157, 169 (1999).

¶ 46                    2. Adequate Representation of Class

¶ 47                         a. Class Counsel

¶ 48                    i. Fraudulent-Transfer Lawsuit

¶ 49    Objectors argue that class counsel breached its fiduciary duty to the class by failing to disclose that, just after the trial court granted preliminary approval of the settlement, class counsel settled a separate case.  In this separate case, Old National Bank v. Anderson, Cook Co. Cir. Ct., No. 2014 CH 06229, Old National Bank sought $3.6 million, alleging that class counsel was liable for fraudulent transfer.  Old National Bank alleged that in 2011 Wanca was liable for a $3.6 million judgment and that, in 2012, Wanca engaged in a fraudulent transfer to avoid payment.  Old National Bank filed its complaint in April 2014, and the class representatives here filed their complaint in July 2014.  Thereafter, the trial court granted preliminary approval of the settlement and class counsel settled its lawsuit with Old National Bank.  Objectors contend that class counsel's failure to disclose the details of the settlement in the fraudulent-transfer case, coupled with its efforts to prevent disclosure, leads to the conclusion that class counsel did not adequately represent the class.

¶ 50    The trial court conducted a lengthy fairness hearing and considered objectors' argument regarding class counsel's concurrent litigation and settlement with Old National Bank.  The trial court found that objectors failed to present any evidence that the settlement here was not the product of good-faith, arm's-length negotiation, that the Old National Bank settlement influenced any action taken by class counsel in this case, or that class counsel breached its fiduciary duty to any class member.  Nothing in the record indicates otherwise.  Therefore, the trial court did not abuse its discretion by overruling objectors' objection.

¶ 51    Objectors cite *Eubank v. Pella Corp.*, 753 F.3d 718 (7th Cir. 2014) to support their argument.  In *Eubank*, the court of appeals held that the district court's approval of the settlement was error for numerous reasons, including class counsel's legal problems, namely, the fact that class counsel was a defendant in two lawsuits involving his former law firm's accusation that he misappropriated assets and a recommendation from the Illinois Attorney Registration and Disciplinary Commission that he be suspended from the practice of law.  *Id*. at 722.  In holding that the settlement should have been disapproved, the court of appeals also reasoned that class counsel replaced three named class plaintiffs because they opposed the settlement.  *Id*.  In this case, objectors provided no evidence that class counsel here was under the kind of financial duress as class counsel in *Eubanks* or that class counsel in this case engaged in the type of self-dealing that class counsel engaged in *Eubanks* (replacing named class plaintiffs who opposed the proposed settlement).  Therefore, *Eubanks* is distinguishable from this case.

¶ 52                             ii. Class Counsel's Relationship with Sabon and C-Mart

¶ 53    Next, objectors argue that class counsel's less-than-arm's-length relationships with Sabon and C-Mart show that class counsel is inadequate and, therefore, cannot serve as class counsel.  Objectors argue that Sabon and class counsel have collaborated on at least five TCPA class actions and that class counsel has paid Sabon more than $10,000.  Objectors also contend that class counsel had a similar relationship with C-Mart, class counsel solicited C-Mart, and C-Mart did not know what a class action was.  Because objectors failed to raise these arguments in the trial court, these issues are forfeited on appeal.  See *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996).

¶ 54                                3. Class Representatives

¶ 55    Objectors argue that Fauley and Sabon are inadequate class representatives.  Objectors contend that Fauley is an inadequate class representative because "no information is available

about [him] because he refused to appear for a deposition." Objectors argue that Sabon is an inadequate class representative because Sabon is closely associated with class counsel in that "[they] work together on TCPA cases." MetLife argues that objectors have forfeited these arguments because they raise them for the first time on appeal. We agree with MetLife. Austin's objection to the final approval of the settlement (adopted and joined by Clayton) did not raise the issues it now raises on appeal regarding Fauley and Sabon. Austin made only a vague allegation that "[g]iven the obvious defects in the Proposed Class Settlement one must seriously question whether class counsel and the named representatives can fairly and adequately represent the class." It is well settled that "issues not raised in the trial court are deemed [forfeited] and may not be raised for the first time on appeal." *Id.* Because objectors failed to raise these issues in the trial court, these arguments are forfeited.

¶ 56                                    4. Attorney Fees

¶ 57    Objectors argue that the trial court erred by refusing to allow a lodestar cross-check on class counsel's more than $7.6 million in attorney fees. Objectors also argue that the amount was excessive. The class representatives argue that the trial court did not abuse its discretion by approving the award based on the percentage method. We agree with the class representatives.

¶ 58    In *Brundidge*, our supreme court held that a trial judge has discretionary authority to choose a percentage or a lodestar method when determining the amount of fees to be granted to plaintiff's' counsel in common-fund class-action litigation. *Brundidge*, 168 Ill. 2d at 243-44. The lodestar method is a computation that increases the reasonable value of services rendered by a weighted multiplier; this multiplier represents certain considerations, for example, "the contingency nature of the proceeding, the complexity of the litigation, and the benefits [to] *** the class." *Id.* at 239-40 (citing *Fiorito v. Jones*, 72 Ill. 2d 73, 91 (1978)).

¶ 59    In this case, class counsel submitted time records to the trial court, as ordered, and the trial court examined them *in camera*.  In a brief filed in support of the final approval of the settlement, class counsel summarized its time records, representing that "the time records submitted *in camera* show that [class] counsel's lodestar value was $2,577,811."  Therefore, had the trial court used the lodestar method, the effective multiplier would have been approximately 2.97, well within the range of multipliers used in other common-fund cases.  See *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n.6 (9th Cir. 2002) (a survey of multipliers showed a range from 0.6 to 19.6, with most ranging from 1 to 4, and a "bare majority" ranging from 1.5 to 3.0).  We note that the multiplier here was also justified in light of the trial court's finding that class counsel accepted "substantial risk in prosecuting this case under a contingency fee agreement given the vigorous defense of the case and defenses asserted by [MetLife]."  See *Brundidge*, 168 Ill. 2d at 239-40 (to determine the proper multiplier, a court may consider "the contingency nature of the proceeding" and the complexity of the litigation).  Accordingly, under the lodestar method, the amount of attorney fees would not necessarily have been lower.  Thus, objectors' argument that the trial court should have used a lodestar cross-check on class counsel's fees is unpersuasive.  We cannot say that the trial court abused its discretion by granting the attorney fees based on a percentage of the common fund.

¶ 60    In a related argument, objectors argue that the trial court erred by denying them access to class counsel's time records, "making it impossible to determine whether the amount of hourly fees logged were reasonable and necessary."  It is the appellant's burden to provide a complete record on appeal in order to support a claim of error.  *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005).  Since class counsel's time records are not part of the record on appeal, we are unable to determine if error, let alone prejudicial error, arose.  Class counsel's hours and fees were listed in a pleading, and we will presume that the trial court would have noted any

discrepancies between the pleading and the actual time records after its *in camera* review. Accordingly, we must presume that the trial court's ruling regarding class counsel's fees had a sufficient factual basis and was in conformity with the law. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984) (in the absence of a complete record on appeal, a reviewing court presumes that the trial court's order had a sufficient factual basis and was in conformity with the law).

¶ 61 Next, objectors argue that the trial court erred by awarding class counsel over $7.6 million in attorney fees, because class counsel breached its fiduciary duty to the class. Objectors again contend that class counsel breached its fiduciary duty by failing to disclose the Old National Bank lawsuit. Objectors also contend, again, that class counsel was inadequate because it included Sabon as a class representative and Sabon had "extensive prior dealings with class counsel in [other] TCPA cases." We have already determined that these arguments have no merit. Objectors point to nothing in the record indicating that the settlement was not fair, reasonable, and adequate. See *Steinberg*, 306 Ill. App. 3d at 169. Therefore, the trial court did not abuse its discretion by approving the fee award. See *Quick*, 404 Ill. App. 3d at 281.

¶ 62                                    C. Cross-Appeal

¶ 63 The class representatives appeal the trial court's order denying their motion to strike Austin's objection. We will not address this issue, because it is moot. Our affirmance of the approval of the settlement renders the failure to strike Austin's objection at worst *de minimis*, and harmless, error. Therefore, the class representatives' cross-appeal is dismissed.

¶ 64                                  III. CONCLUSION

¶ 65 For the reasons stated, we affirm the trial court's judgment approving the settlement and dismiss the class representatives' cross-appeal.

¶ 66 No. 2-15-0236, Affirmed.

¶ 67 No. 2-15-0326, Affirmed; cross-appeal dismissed.